**In re James R. BECK, dba J. C. Penney's Beauty Salon, Debtor.**

**Bankruptcy No. 80–00285.**

United States Bankruptcy Court,
D. Hawaii.

July 1, 1980.

Nicholas C. Dreher, Honolulu, Hawaii, for First Hawaiian Bank.

David J. Reber, Honolulu, Hawaii, for J. C. Penney.

John C. Jannetto, Honolulu, Hawaii, for James Beck.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW AND ORDER

JON J. CHINEN, Bankruptcy Judge.

On May 22, James R. Beck dba J. C. Penney's Beauty Salon, hereafter "Debtor", filed Ex parte Motion for Temporary Restraining Order and a Motion for Preliminary Injunction. A Temporary Restraining as modified by the court was filed herein on May 22, 1980. On June 12, 1980 and subsequently on June 17, 1980, hearings were held with respect to Debtor's Motion for Preliminary Injunction and J. C. Penney Company, Inc., hereafter "Penney", request for a determination that its licenses with Debtor had terminated and that said termination was not stayed by the automatic stay provision contained in Section 362 of the Bankruptcy Code. This Court having considered the memoranda filed by the parties, arguments of counsel, and the evidence and records on file herein and being fully advised in the premises, makes the following Findings of Fact and Conclusions of Law:

## FINDINGS OF FACT

1. On February 18, 1965 and April 15, 1970, respectively, Beck entered into certain License Agreements for Department Operations with Penney pursuant to which Beck was granted the right to operate beauty salons at Penney's stores in the Ala Moana and Pearlridge Shopping Centers. True copies of the License Agreements are attached as Exhibits "A" and "B" to Beck's Motion for Preliminary Injunction filed on May 22, 1980.

2. Under paragraph 2 of the License Agreements, Beck is licensed to use certain

designated spaces in the Penney's stores in return for a license fee, and the License Agreements specifically provide in paragraph 12 that "[t]he relationship between the parties hereto is entirely contractual, and this agreement and the relationship of the parties hereunder shall not be deemed to create a lease or any other interest in real property."

3. With respect to the business of the beauty salons, paragraph 12 of both License Agreements provides as follows:

"[T]ransactions with customers shall be handled, and the Licensed Department shall be advertised, solely in the name of Penney, and the Operator shall not in any way use its own name in connection with such transactions with customers or link its name with Penney's in any publicity or advertising. All records of customers' names and other related information with respect to the operation of the Licensed Department or the Store shall be the exclusive property of Penney and shall not at any time (either during or after the term hereof) be divulged by the Operator to any third party, or utilized by the Operator, except where such use is required in the operation of the Licensed Department in the Store."

4. The term of the License Agreements is specified in paragraph 17 of each agreement:

"This agreement shall continue in effect until terminated by either party hereto by giving at least 60 days prior written notice of the effective date of such termination to the other party."

5. On or about March 28, 1980, Penney's notified Debtor that, pursuant to paragraph 17 of the License Agreements, the "License Agreements shall be, and the same hereby are, terminated and of no further force or effect effective as of the close of business Saturday, June 14, 1980."

6. The termination of the License Agreements by Penney's was due to irregularities in Debtor's accounting for receipts from the beauty salon operations, and not due to the financial condition or insolvency of the Debtor.

7. Debtor filed its original petition herein under Chapter 11 of the Bankruptcy Code on May 16, 1980.

8. Debtor has asserted the position that it is entitled to continue its beauty salon operation at the Penney's stores by virtue of the protection provided by the Automatic Stay provisions of Section 362 of the Bankruptcy Act. Penney's contends that the term of the License Agreements has expired and that the provisions of the automatic stay do not prevent such expiration.

## CONCLUSIONS OF LAW

1. This Court has jurisdiction to determine this matter and this issue is properly before it.

2. Debtor's License Agreements were duly terminated by the notice of termination transmitted by Penney on or about March 28, 1980. Nothing remained to complete the termination process after that date, except the mere passage of time.

3. Under the terms of paragraph 17 of the License Agreements and by virtue of Penney's termination notices, the License Agreements expired in accordance with their terms on June 14, 1980.

4. The termination and expiration of the License Agreements does not in any way violate state or federal law and Debtor has no right of any nature that would permit him to extend the expired terms of the License Agreements.

5. Section 365 of the Bankruptcy Code prescribes the termination or modification of any executory contract or unexpired lease after the commencement of a bankruptcy case solely because of the insolvency or financial condition of the Debtor or "ipso facto" clauses in a contract, and permits a Trustee to cure certain defaults in executory contracts or unexpired leases. In this case, the termination of the License Agreements was not for any of the reasons prescribed by Section 365.

6. It is well established that the filing of the petition for relief with the Bankruptcy Court in no way gives rise to a right in the

Trustee as Debtor in possession to extend the time of the License Agreements, which expired by their terms on June 14, 1980. *Thompson v. Texas Mexican R. Co.*, 328 U.S. 134, 66 S.Ct. 937, 90 L.Ed. 1132 (1946); *Good Hope Refineries, Inc. v. Benavides*, 602 F.2d 998 (1st Cir. 1979), *cert. denied*, 444 U.S. 992, 100 S.Ct. 523, 62 L.Ed.2d 421 (1979); *Schokbeton Industries, Inc. v. Schokbeton Products Corp.*, 466 F.2d 171 (5th Cir. 1972).

7. The Automatic Stay provisions of Section 362 did not in any way prevent expiration of the License Agreements on June 14, 1980 in accordance with their terms. Prior to the filing of the Chapter 11 petition by Beck, Penney gave notice of termination and no further action was necessary to result in the expiration of the License Agreements. The Automatic Stay provision only protects a debtor's property interests, and at best any property interest of the Debtor under the License Agreements expired as of June 14, 1980. Further, Debtor at no time had an estate in property of Penney's. It merely had a license which creates a personal right for the use of the premises. It was an executory contract subject to termination on a specified notice.

8. In enunciating the rule with respect to such executory contracts, the Supreme Court in *Thompson v. Texas Mexican R. Co.*, 328 U.S. 134, 66 S.Ct. 937, 90 L.Ed. 1132 (1946) stated:

> Cancellation of a contract pursuant to its terms alters, of course, rights and duties of the trustee. But the Bankruptcy rule is that he takes the contracts of the debtor subject to their terms and conditions. Contracts adopted by him are assumed *cum onere*. The general rule is (1) that if the other party had a right to terminate the arrangement, that right survives adoption of the contract by the trustee, and (2) that the incidence of termination, except as it interferes with the exclusive jurisdiction of the bankruptcy court, may be litigated in any court where the trustee may be sued. Id. at 141, 66 S.Ct. at 942. (footnote omitted).

9. The Debtor relies on a series of pre-Bankruptcy Code cases which appear to stand for the proposition that this Court has inherent equitable power to enjoin the termination of an executory contract or unexpired lease which has been terminated because of a default in payment of rent or for other cause prior to the expiration of its term. These cases involve situations, however, where the termination process has not been completed prior to the commencement of the bankruptcy proceeding; where there may be some power to prevent the termination because of contractual or state law antiforfeiture provisions; where the term of the contract or lease has not yet expired; and/or where permitting the termination will involve an extreme forfeiture or other gross inequity which provides a compelling overriding need for the Court to exercise its equitable powers. See *Good Hope Refineries, Inc. v. Benavides*, 602 F.2d 998 (1st Cir. 1979), *cert. denied*, 444 U.S. 992, 100 S.Ct. 523, 62 L.Ed.2d 421 (1979); *Schokbeton Industries, Inc. v. Schokbeton Products Corp.*, 466 F.2d 171 (5th Cir. 1972). None of these considerations are present here.

10. It is unnecessary to decide in this case whether this Court has the discretionary equitable power to permit the Debtor to continue his beauty salon operations at the Penney's stores for a temporary period. It is clear that there are no overriding equitable considerations of the type that must be shown if this Court is to depart from its normal charge in a Chapter 11 case to enforce valid license terminations against debtors still in possession when the terminations are based on license provisions having nothing to do with bankruptcy. See *In Re D. H. Overmyer Co.*, 510 F.2d 329 (2d Cir. 1975). For example, Debtor's contention that he will lose his goodwill if not permitted time to find another location is not persuasive inasmuch as the License Agreements make it clear that the goodwill of the beauty salon operations is the property of Penney's, not Debtor.

### ORDER

Based on the foregoing Findings of Fact and Conclusions of Law,

IT IS HEREBY ORDERED, AD-JUDGED AND DECREED THAT:

1. The Debtor's rights under the License Agreements have expired;

2. The Debtor no longer has a right to use the licensed spaces at the Penney's stores.