In the Matter of RUBY'S FLORIDA, INC. d/b/a Cindy's Ole Time Hamburgers, Bankrupt.

LARGO VILLAGE SHOPPING CENTER, INC., Plaintiff,

v.

RUBY'S FLORIDA, INC. d/b/a Cindy's Ole Time Hamburgers, Defendant.

Bankruptcy No. 81-00292.

United States Bankruptcy Court, M. D. Florida, Tampa Division.

April 2, 1981.

Harley E. Riedel, Tampa, Fla., James E. Byrne, Clearwater, Fla., for Largo Village Shopping Center.

Donald A. Alessi, Buffalo, N.Y., David W. Steen, Tampa, Fla., for Ruby's Florida Inc.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND MEMORANDUM OPINION

ALEXANDER L. PASKAY, Chief Judge.

THE MATTER under consideration is a complaint filed by Largo Village Shopping Center, Inc. (Largo Village). The complaint sets forth two counts.

In Count I, Largo Village seeks a declaratory judgment determining:

(1) That the Defendant was not a lessee under the terms of the lease and has no interest in the real property; or, alternatively,

(2) That any interest of the Defendant in the real property was terminated prior to the Chapter 11 proceeding and the Defendant has no interest in the leased premises;

(3) That the Defendant has no interest in the personal property located on the leased premises; or, alternatively,

(4) That nature and extent of the Defendant's interest in the personal property and its right to remove the property.

In Count II, Largo Village seeks relief from the automatic stay in order to remove the Defendant, Ruby's Florida, Inc. d/b/a Cindy's Ole Time Hamburgers, (Ruby's) from the leased premises. Largo Village also seeks in Count II, in the alternative, adequate protection in the event it is denied relief from the stay, in order to recover the equipment left on the premises owned by Largo Village.

Largo Village filed a Motion for Emergency Relief and the evidence presented at the hearing reveals the following:

On March 6, 1978, Louis A. Barrafato and Cyril J. Alessi, as lessees, entered into a shopping center lease with one Ben C. Collier, who was the owner of the shopping center on that date. The lease provides, inter alia, that the lessees shall not sublet the demised premises without the prior written consent of the lessor. According to the lease, the remedies of the lessor upon default include an option to terminate the lease forthwith; re-enter the premises or otherwise acquire possession of the same and also recover the rent to be paid under the lease. Although it is not clear from the record, this lease was later assigned by Ben Collier to the Plaintiff, Largo Village, who is the present owner of the shopping center.

In December, 1979, Ruby's published in the Pinellas Revue, a weekly publication, a notice in compliance with Fla.Stat. § 865.09 (1979) stating that it intends to engage in business under the fictitious name of Cindy's Ole Time Hamburgers. This appears to be a fast food franchise located at 11950 Seminole Blvd. in Largo, Florida.

It is without dispute that on December 10, 1980, the general manager of Largo Village sent a notice of default for non-payment of rent addressed to Louis Barrafato and Cyril Alessi and according to the certificate on the notice, left the notice at 11942 Seminole Blvd., Largo, Florida. It appears, however, that the correct address of the business is 11950 Seminole Blvd., but it is without dispute that there is only one Cindy's Ole Time Hamburgers restaurant located in this particular shopping center.

On January 23, 1981, Largo Village filed a complaint in the County Court for Pinellas County, Florida, and sought a judgment for possession of the premises based on Fla. Stat. § 34.011 (1979). The complaint was served by the sheriff together with a summons by posting the same on the premises on January 22, 1981. The defendants named in the complaint, Louis Barrafato and Cyril J. Alessi, having failed to plead to

the complaint, the County Court entered a final judgment in favor of Largo Village and directed the issuance of a Writ of Possession in its favor on February 5, 1981. The Writ of Possession was issued on February 6 and counsel for Largo Village instructed the sheriff to proceed and execute the Writ.

It appears, however, that during the interim, Mr. Bartolomei, who represented himself to be a friend of Mr. Alessi, one of the lessees, contacted Mr. Byrne, counsel for Largo Village, by telephone and commenced to discuss the matter of the lease. Mr. Byrne also received a telephone call from Mr. Geller a local attorney and spoke to him, but only unofficially, because Mr. Geller stated that he is not really representing the lessees, but merely inquiring about the status of the lease.

On February 18, 1981, Mr. Byrne had a telephone conversation with Mr. Donald A. Alessi, a brother of one of the lessees, who is a practicing attorney in Buffalo, New York. In this conversation, Mr. Byrne agreed to extend the time for the surrender of the premises up to February 24, 1981. This telephone conversation was confirmed by a Mailgram (Pl's. Exh. # 3) sent by Mr. Alessi. On February 25, 1981, 11:12 EST, Mr. Byrne sent, through Western Union, a message to Mr. Donald A. Alessi as attorney for Ruby's advising him that pursuant to the Writ of Possession, the sheriff of Pinellas County delivered possession of the premises to Largo Village. (Pl's. Exh. # 1). The message also advised Mr. Alessi that Largo Village considers only Louis Barrafato and Cyril Alessi to be the lessees, but if there is any personal property belonging to Ruby's, it is willing, upon written request, to deliver the properties of Ruby's. This telegram was delivered to Donald Alessi at 12:24 p. m., February 24, 1981. (Pl's. Exh. # 1).

Earlier, on February 23, 2:56 EST, Mr. Donald Alessi sent the following message to Mr. Byrne.

Please be advised that the petition under Chapter 11 has been filed on that date, Case No. 81–292, and by virtue of § 362 any act to obtain possession is automatically stayed pending further Court order.

The message failed to identify the Debtor who filed the petition for relief and it is without dispute that neither Mr. Barrafato nor Mr. Alessi are Debtors involved in the Middle District of Florida in any proceeding under the Bankruptcy Code and the only Debtor involved in the Chapter 11 proceeding is Ruby's Florida, Inc., d/b/a Cindy's Ole Time Hamburgers.

It is without dispute that the sheriff changed the locks on the premises and at present, the premises are still locked. Although no checks were offered in evidence representing rent payments, it is intimated that the checks were drawn on the bank account which might have read Ruby's d/b/a Cindy's, but it is unclear whether or not the checks were corporate checks or the bank account was merely maintained under a fictitious trade name.

It is Largo Village's contention that it is immediately entitled to the relief sought for the following reasons:

First, Ruby's, the corporate debtor, never acquired any right of possession of the premises since it was not the lessee named in the lease. Second, even if one assumes that there was an assignment of the lease between Barrafato and Alessi, the owner of the premises, such assignment is invalid and unenforceable since it was made without the prior written consent of the landlord. Third, even assuming that the landlord is estopped to claim unenforceability of this alleged assignment because it accepted rent payments from Ruby's, the lease was effectively terminated December 16, in any event and the final judgment entered in the County Court awarding final possession of the premises to Largo Village is a binding determination, therefore, Ruby's is collaterally estopped from claiming that it is a rightful tenant of the premises inasmuch as it failed to defend the eviction action in a State Court even though it was properly served, citing *In the Matter of Albany Funding Co.*, 19 C.B.C. 82 (S.D.N.Y.1978). In addition, Largo Village urges that the acceptance of checks under the laws of this

State do not operate as a waiver of the anti-assignment covenants in the lease, in the absence of showing that the landlord was aware of the unauthorized assignment.

In opposing Largo Village's claim, Ruby's urges that there is no justification for the emergency hearing; that the matter should be set down for final evidentiary hearing in order to enable Ruby's to establish that the lease was, in fact, assigned; that Largo Village is somehow estopped from urging a breach of the anti-assignment covenant; that the lease was not effectively terminated because the notice was sent to an incorrect address; that the service of process in a distress proceeding in a State Court for some unexplained reason not articulated by Ruby's was defective.

Relying heavily upon these last contentions, Ruby's urges that this Court should not grant relief to Largo Village because of this alleged violation of the automatic stay; that Ruby's therefore, should be able to regain possession of the premises. Realizing, however, that it has some obligation to the landlord, Ruby's offered by way of adequate protection payment for the March rent within two weeks, and to commence monthly payments on April 1, 1981. No promise was made to cure the default in the rent which is now four months overdue. Of course, whatever is promised to the landlord sounds quite hollow in light of the undisputed fact that Ruby's has had no income since February 24, 1981.

Having considered the respective contentions of the parties, this Court is satisfied that Largo Village is entitled to the relief sought and it would not serve any useful purpose to give an opportunity to Ruby's to present evidence in support of its defenses outlined above simply because they are without merit either as a matter of law or as a matter of fact.

The key question which is determinative to this controversy is whether or not the notice of December 10, 1980 did effectively terminate and cancel the lease. This is so because if the lease was, in fact, properly terminated on that date, an intervention of a Chapter 11 proceeding has no impact on same simply because if a lease agreement is terminated it is no longer assumable because it is no longer an executory contract. V. Countryman, *Executory Contracts in Bankruptcy: Part II*, 58 Minn. L.Rev. 749 (1974). As stated by Judge Brown in *Schokbeton Industries, Inc. v. Schokbeton Products Corporation*, 466 F.2d 171 (5th Cir. 1972):

> "Debtor's rights ... evaporated upon receipt of the written notice of termination, and neither the mere filing of the arrangement petition, nor the referee's order purporting to extend the grace period for cure of the default nor a mystical combination of both could effect their recondensation."

See also, *In re Beck dba J.C. Penney's Beauty Salon*, 5 B.R. 169, 6 B.C.D. 1119 (Bkrtcy.D.Haw.1980); *Thompson v. Texas Mexican R. R.*, 328 U.S. 134, 66 S.Ct. 937, 90 L.Ed. 1132 (1946); V. Countryman, *Executory Contracts in Bankruptcy: Part I*, 57 Minn.L.Rev. 439 (1973).

It is true that at times courts, based on equitable considerations, agreed to convert terminations, therefore, non-executory contracts into assumable contracts. In the case of *In re Fontainebleau*, 515 F.2d 913 (5th Cir. 1975), the Court seemingly agreed to resurrect a terminated lease, but based its conclusions that there was still an assumable lease, because under the applicable state law, a lease could not be terminated without the intervention of a judicial tribunal.

Be that as it may, this Court is of the opinion that when a point of law is clearly covered by established legal principles, equity should not interfere and disregard controlling legal principles. *In the Matter of Mimi's, Inc.*, 5 B.R. 623 (Bkrtcy. N.D.Ga.1980). As noted earlier in *Schokbeton, supra*, the intervention of a bankruptcy cannot operate magically and breathe life into a lease which died long before the intervention of the bankruptcy.

This conclusion, however, does not resolve the question whether or not the protective provisions granted by § 362 of the Code furnishes any assistance to a Debtor whose

lease was effectively terminated prior to the commencement of a bankruptcy case, and there is nothing left but the naked right to possession. The Bankruptcy Court considering the identical question in the case of *In re G.S.V.C. Restaurant Corporation*, 3 B.R. 491, 1 C.B.C.2d 727 (Bkrtcy.S.D. N.Y.1980) held that even though the Debtor's lease was terminated prior to the intervention of the bankruptcy proceeding, the Debtor's de facto right to possession represented an equitable interest which was a sufficient nexus to support the application of the automatic stay, but lifted the automatic stay because of a Debtor's delaying tactics and its unwillingness to furnish adequate protection. In the case of *In re RRS, Inc.*, 7 B.R. 870 (Bkrtcy.M.D.Fla., 1980), this Court concluded that § 362 of the Bankruptcy Code may furnish temporary protection to the Debtor's naked right of possession of the premises although the automatic stay even if it applied, it has no bearing on the continued viability of a lease agreement and does not create an assumable lease which has been terminated prior to the commencement of a bankruptcy case.

■ There is one more point which is relevant and deserves consideration. It appears in the present instance that the chattels on the premises consist of restaurant equipment and fixtures and that these chattels are properties of Ruby's, and Ruby's should be given a reasonable time to arrange for the removal of these chattels from the premises. It is also fair and equitable, however, to accord an administrative claim to Largo Village for the use and occupancy of the premises for a period the chattels remain in the premises pursuant to § 507(a)(1).

■ Based on the foregoing, this Court is satisfied that (1) whatever interest Ruby's had in the lease, the same has been effectively terminated prior to the intervention of bankruptcy; (2) even if there was an assignment of the original lease by the original lessee to Ruby's, the assignment is invalid and unenforceable; and (3) the breach by the lessees was not waived by the acceptance of rent payments by the lessor.

■ Even if the assignment was valid, and the lease was not effectively terminated, Ruby's is collaterally estopped now to contend otherwise in light of the fact that it failed to defend the action of the landlord in a State Court proceeding.

Having concluded that Ruby's has no longer a viable lease, this leaves for consideration the precise relief which could be granted at this time to Largo Village. Inasmuch as this record is insufficient concerning proof of ownership of the personal property located on the premises, the nature and extent of Ruby's interest and its right to remove same from the premises, the matter shall be set down for a final evidentiary hearing forthwith in order to resolve this matter.

A separate partial final judgment will be entered in accordance with the foregoing.