**In re M & E ENTERPRISES, INC., Debtor.**

**MIDAS INTERNATIONAL CORP., Plaintiff,**

**v.**

**M & E ENTERPRISES, INC., Defendant.**

**Bankruptcy No. 82-00629-BKC-JAG.**
**Adv. No. 82-0358-BKC-JAG-A.**

United States Bankruptcy Court,
S.D. Florida.

June 25, 1982.

Reggie David Sanger, Fort Lauderdale, Fla., for debtor-defendant.

Laurence A. Schroeder, c/o Walton, Lantaff, Schroeder & Carson, Miami, Fla., for plaintiff.

FINDINGS AND CONCLUSIONS

JOSEPH A. GASSEN, Bankruptcy Judge.

Plaintiff Midas International Corporation brought this adversary action for injunctive relief for trademark infringement and unfair competition, for relief from the automatic stay of § 362 of the Bankruptcy Code, and for dismissal of the debtor's chapter 11 proceeding. The case was consolidated for trial with that of *Midas International Corporation vs. Volpe Enterprises, Inc.*, Adversary Case No. 82-0359-BKC-JAG-A. Both the defendant here, M & E, and Volpe operated automotive service shops, primarily for the replacement of mufflers. Both were owned by the same persons and the premises for each were leased from the former owner. The defendant had a franchise agreement with the plaintiff and this litigation revolves around that agreement (Plaintiff's Composite Exhibit No. 2).

Plaintiff has cast its complaint primarily as an issue of trademark infringement. This begs the real issue, which is whether or not the franchise agreement was effectively terminated prior to bankruptcy. The defendant's use of the Midas trademark has been pursuant to the agreement, which it believes it still has rights under, and in conjunction with Midas products which plaintiff has sold to it.

Under the franchise agreement, defendant was to remit royalty payments for each month on the 10th of the succeeding month. These records were kept as a royalty account. The defendant also had a separate trade account with the plaintiff, to which was charged the cost of Midas products supplied to the defendant and through which it was credited when guaranteed replacements were made. However, the defendant had been on a C.O.D. basis for a year or more, so only credits were made to that account. Plaintiff's general credit manager testified that plaintiff occasionally permitted trade account credits to be applied to the royalty account.

Plaintiff's witnesses testified to a history of slow and late payments by the debtor on the royalty account during the previous year. As a result, default notices were sent to the defendant on April 24, 1981, October 20, 1981, January 6, 1982, January 15, 1982, and February 18, 1982. On March 9, 1982, a Notice of Termination, effective April 1, 1982, was sent. All of these letters, together with return receipt forms are included in Plaintiff's Composite Exhibit No. 2. Some of the earlier defaults were cured, but the

January, February and March, 1982 royalty payments were not made prior to the termination letter. (There may have been checks tendered in some instances which were returned for insufficient funds.)

Article 8.2(c) of the franchise agreement, provides in pertinent part:

> In the event Franchisee has been given written notice of default by Midas three times within any period of twelve consecutive months pursuant to paragraphs (a) and/or (b) above, and in each of such prior instances Franchisee has cured the default within the time permitted, then in the event Franchisee again fails, within said twelve-month period, to perform any obligation referred to in paragraph (a) or (b), Midas may at any time thereafter terminate this Agreement forthwith, without giving prior notice of such default and without affording Franchisee any period in which to cure such default, by giving written notice of such termination to Franchisee.

The defendant contends that plaintiff is estopped from now terminating when it had previously permitted defendant to cure. (Upon notice of termination, the debtor tendered cashier's checks which were not accepted.) Although the terms of the default letters do not give any hint that Midas might terminate despite timely curing of default, the language of the contract, which the defendant is bound by, is quite clear. Because of the prior notices of default, Midas had the right to terminate the agreement without a preliminary warning in the notice. Similarly, there was insufficient evidence of any other representations or actions by the plaintiff which would estop it from terminating the agreement.

Defendant also argues that it would not have been in default in certain of the instances, had amounts been properly credited, and impliedly argues that, because the default notices were incorrect, they cannot form the basis for the termination notice pursuant to Article 8.2(c). While there was some evidence that the plaintiff's manner of applying certain credits departed from its customary manner in a way unfavorable to the defendant, the defendant did not put on sufficient evidence to demonstrate that it had not been in default a sufficient number of times to justify the termination notice. Therefore, the termination must stand.

Since the franchise agreement was validly terminated prior to the filing of bankruptcy, there is nothing left for the court to resuscitate or protect. *In re Benrus Watch Co., Inc.,* 13 B.R. 331, 4 C.B.C.2d 1401 (Bkrtcy.S.D.N.Y.1981); *In re Beck,* 5 B.R. 169, 6 B.C.D. 1119 (Bkrtcy.Hawaii 1980); *Schokbeton Industries, Inc. v. Schockbeton Products Corp.,* 466 F.2d 171 (5th Cir. 1972). Therefore, the ability of the debtor to reorganize and the value of the franchise to a reorganization are not relevant to a determination of this adversary.

There was evidence from one witness which was more closely related to the trademark infringement—unfair competition issue. A private investigator testified that he was led to believe he was purchasing a Midas muffler and receiving a Midas guarantee. However, he observed that the muffler did not come out of a Midas box. The warranty certificate he was given (Plaintiff's Exhibit No. 5) very plainly says that the muffler guaranteed was not a Midas, but the customer's signature was on the reverse side and the witness testified that the employee he dealt with did not show him the full certificate. The plaintiff did not dispute the testimony of Clifford Varrieur, a principal of the defendant, that the defendant had permission from Midas to sell products and give guarantees other than the Midas guarantee. Varier also testified that it was not the practice of the defendant to represent that the other mufflers were Midas mufflers, and further testified that customers are given the choice of Midas or less expensive brands.

If there has been any trademark infringement or unfair competition in the defendant's manner of selling other products, the opportunity for such acts will be substantially reduced by this court's determina-

tion that the termination of the debtor's right to operate under the franchise agreement was valid. There has been no showing of a likelihood that the debtor will continue to hold itself out as a Midas dealer or that it will sell other products, falsely representing them to be Midas products, once it has received a court ruling unfavorable to its position that it may continue to operate under the franchise agreement. However, an order enjoining defendants from so doing will not impose on it any greater limitations than a declaratory order. Therefore, an injunction against defendant will be entered.

A Final Judgment in accordance with these Findings and Conclusions will be entered this date.