**In re Anthony TUCCI, Judy L. Tucci, Debtors.**

**Bankruptcy No. 82–00275–A.**

United States Bankruptcy Court,
E.D. Virginia,
Alexandria Division.

March 18, 1985.

John C. Somers, Woodbridge, Va., for debtors.

Robin M. Neyman, Vienna, Va., for Andrew Neyman.

Gerald M. O'Donnell, Alexandria, Va., Trustee in Bankruptcy.

## MEMORANDUM OPINION

MARTIN V.B. BOSTETTER, Jr., Bankruptcy Judge.

Andrew Neyman ("Neyman" or "landlord") has filed a Proof of Claim for an administrative expense in the amount of $2,835.00.[1] Neyman is the landlord of 14511 Jefferson Davis Highway, Woodbridge, Virginia, which premises were rented by the debtors for the operation of a bakery and carry-out food establishment.

A review of the evidence reveals that the debtors filed a joint petition under Chapter 13 of the Bankruptcy Reform Act of 1978 ("the Code"), 11 U.S.C. § 101 *et seq.*, on March 4, 1982. At the time of filing their petition, the debtors were the sole lessees on a lease agreement with Neyman for the period ending December 31, 1982. When the debtors filed their petition in bankruptcy, the subject premises were occupied with bakery equipment and fixtures. The above equipment and fixtures were covered by a lien securing a loan made by the Virginia National Bank. On May 10, 1982, this Court entered a Consent Order lifting the automatic stay imposed by section 362 of the Code and awarding the equipment and fixtures to the Virginia National Bank. The landlord has filed a claim for administrative rent for the period from the filing of the petition to the date the stay was lifted.

This case has a rather curious procedural history, a review of which may be helpful. Debtors filed their Chapter 13 petition on March 4, 1982. Debtors did not file their Chapter 13 Plan ("the original plan"), Chapter 13 Statement ("the Statement") and their schedules until March 25, 1982. The Statement indicated that the debtors' occupation was the operation of the bakery but also indicated that the bakery had been closed. Furthermore, the Statement revealed that the limited partnership which had constituted the bakery had been terminated on March 10, 1982.

Debtors' original plan provided for a 100% payment to both secured and unsecured creditors and listed only payments to the Trustee in Bankruptcy ("trustee") as priority payments under section 507. The original plan also indicated that the debtor desired to reject the unexpired lease with the landlord. Furthermore, the original plan stated that the debtors proposed to surrender the bakery equipment and fixtures to the secured creditor.

On May 10, 1982, debtors filed their second Amended Chapter 13 Plan. This plan was generally the same as the original plan except the debtors added the Virginia National Bank as an unsecured creditor and the plan was extended from forty-eight months to sixty months. On June 4, 1982, debtors filed their third Amended Chapter 13 Plan ("third Amended Plan"). The third Amended Plan still provided for a 100% payment to all creditors but added a priority payment under section 507 of three months rent at $900.00 per month. There can be no doubt but that this payment was pursuant to the lease agreement with the landlord. As indicated above, this Court previously had entered a consent order awarding the bakery equipment and fixtures to the secured creditor, the Virginia National Bank.

This Court confirmed debtors' third Amended Plan by order entered August 10, 1982. Pursuant to a motion for reconsideration filed by the Virginia National Bank, however, this Court entered an order on November 5, 1982 revoking the confirmation of debtors' third Amended Plan and allowing debtors five days to modify their Chapter 13 Plan. Thereafter, debtors filed their fourth Amended Chapter 13 Plan ("fourth Amended Plan").

The fourth Amended Plan provided for only a 7% payment to unsecured creditors and removed the rental payments as a priority payment. Furthermore, the fourth Amended Plan indicated that the debtors were not rejecting any executory contracts

---

1. In addition to containing a claim for administrative rent under 11 U.S.C. § 503(b)(1)(A), the landlord's Proof of Claim also included an unsecured claim for $741.81 to which there is no objection, and accordingly, that claim will be allowed. 11 U.S.C. § 502(a).

or unexpired leases. Additionally, debtors' plan no longer evidenced their desire to surrender the equipment and fixtures located on the leased premises to the secured creditor. Of course, by this time, the Court had lifted the automatic stay and had awarded the property to the secured creditor.

This Court confirmed debtors' latest amended Plan by order entered February 2, 1983. Only sixteen days later, debtors converted their Chapter 13 case to a case under Chapter 7 of the Code. This case continues as a liquidation proceeding.

The landlord filed an amended Proof of Claim on September 2, 1982. In that Proof of Claim, Neyman claims $743.81 as an unsecured claim without priority. This claim is not contested. Additionally, Neyman claims $2,835.00 as a priority expense incurred in the administration of debtors' case as rent for the premises in which the business was conducted and the equipment and fixtures were stored until their release to the secured creditor. The debtors filed an objection to this portion of Neyman's claim on December 27, 1982. Subsequently, this Court heard oral argument on debtors' objection to the priority claim and took the matter under advisement. Following conversion of the case to a case under Chapter 7 of the Code, the trustee also filed an objection to Neyman's claim.

In his Brief in support of the objection to Neyman's claim, the trustee adopts the arguments of the debtors as well as arguing additional points. The trustee's basic position is that the debtors surrendered the subject premises and the property contained therein on March 10, 1982, shortly after filing their petition. Thus, the trustee maintains that no estate of the debtors was preserved by use and occupancy of the leased premises. Additionally, the trustee contends that the debtors rejected the lease in the plan filed on March 25, 1982 under section 1322(b)(7) which requires no court approval and that the landlord is not entitled to claim an administrative expense for the reasonable time period which elapsed between the filing of the petition and the express revocation of lease.

By adopting debtors' position, the trustee also argues that the Chapter 13 plan did not provide for the use of the premises or the bakery equipment located therein. Furthermore, trustee takes the position that it was "incumbent upon the landlord to file a complaint to lift the stay in order to minimize their actual damages." Finally, the trustee adopts debtors' argument that in order for the landlord to act as a custodian he must have received prior court approval. In this case, the trustee's position by reference is that the landlord acted voluntarily as a custodian of the bakery equipment and should not be entitled to a priority claim.

The landlord argues that he is entitled to an administrative priority for the three months post-petition rent. The basis for his position is that the leased premises were used as a storage facility for the equipment and fixtures of debtors' bakery business. The three-month period over which the landlord has claimed administrative rent runs from the date debtors filed their petition in bankruptcy, March 4, 1982, to the date this Court lifted the automatic stay, releasing the equipment and fixtures to the Virginia National Bank, May 10, 1982. There is no dispute but that the lease agreement required that rental payments be made by the first day of each month. Thus, although the equipment and fixtures were released from the estate on May 10, 1982, Neyman claims the full rent for the month of May.

In support of his position, the landlord states that he was never informed that the debtors rejected the lease prior to May 10, 1982. Furthermore, although the Chapter 13 Plan filed March 25, 1982 indicated the debtors were rejecting the lease, that plan was never confirmed. The Amended Plan that was confirmed on August 10, 1982 did reject the lease but Neyman correctly asserts that the confirmed plan provided a priority payment for three months rent at $900.00 a month. Subsequently, this Court revoked the order of confirmation. The

only other Chapter 13 plan confirmed in this case, filed November 15, 1982, indicated that no executory contracts were rejected.

In order for the Court to render the proper decision in this matter, three separate areas must be discussed. Those areas are: abandonment of property; rejection of an unexpired lease or executory contract; and the effect of a conversion of a case on the instant issue.

Upon the filing of the debtors' joint petition under section 302 of the Code, the bankruptcy estate was created. 11 U.S.C. § 541(a). The bankruptcy estate is comprised of "all legal or equitable interests of the [debtors] in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). In the instant case, property of the estate included the equipment and fixtures located in the leased premises as well as the debtors' leasehold interest in the premises itself. *In re Maxwell,* 40 B.R. 231, 237 (D.C.N.D.Ill.1984) and cases cited therein; *Matter of Mimi's of Atlanta, Inc.,* 5 B.R. 623, 627 (Bankr.N.D.Ga.1980) *aff'd and remanded,* 11 B.R. 710, 711 (D.C.N.D. Ga.1981); *see* H.Rep. No. 95–595, 95th Cong., 1st Sess. 367 (1977). The property of the debtors' estate is protected by the automatic stay imposed under section 362 of the Code. 11 U.S.C. § 362(a).

The trustee argues that according to the landlord's claim for three months rent a priority status under section 503(b)(1)(A) would be inappropriate because the bakery equipment and fixtures were not property of the debtors' estate. The trustee asserts that by filing their plan, which indicated the debtors' desire to surrender the equipment and fixtures, those properties were surrendered. Thus, the trustee adopts the debtors' argument that the property was abandoned shortly after filing the petition.

■ Property that is burdensome to the estate may be released by abandonment under section 554 of the Code. Property may be abandoned pursuant to a motion of the trustee or of any party in interest. 11 U.S.C. §§ 554(a), (b). Such property can be abandoned, however, only after notice and a hearing. *Id.* As "notice and a hearing" is defined under section 102(1) of the Code, a hearing is required only if an objection is filed to the proposed abandonment. 124 Cong.Rec. H11,090 (daily ed. Sept. 28, 1978); S17,407 (daily ed. Oct. 6, 1978) *cited in* 4 *Collier on Bankruptcy* ¶ 554.02, at 554–9 n. 10 (15th ed. 1984); *see* R.Bankr.P. 6007(c). It is equally clear, however, that the party proposing the abandonment of the property must give notice of the abandonment. R.Bank.P. 6007(a). In this case, no such notice was given nor did this Court approve abandonment of the property. Furthermore, the consent order submitted to this Court which was entered on May 10, 1982 awarding the equipment and fixtures to the secured creditor indicated that "the Debtor is the owner of certain fixtures and equipment located at the [leased] premises...." This assertion is made in the face of debtors' argument that the property had been abandoned three months earlier. The order was signed by debtors' counsel and the present trustee. This Court cannot find that the equipment and fixtures were abandoned by the debtors or by the trustee.

The trustee also argues that the lease had been surrendered on March 10, 1982. The basis of this assertion is the debtors' Chapter 13 Statement filed on March 25, 1982. In fact, line 2(e) of the Statement indicates that the limited partnership between the debtors and another party which constituted debtors' bakery was terminated on March 10, 1982. The lease is not discussed at that point. On line 10 of the Statement, the debtors indicated that a lease was surrendered during the ninety days prior to the filing of the petition. This, in fact, was not the lease for the subject premises nor does the trustee argue that there was a pre-petition surrender of that lease.

As the foregoing discussion indicates, debtors neither could have abandoned nor surrendered their leasehold interest without notice and a hearing under section 554. Furthermore, the Chapter 13 Statement is not helpful in determining whether the

lease was surrendered. The trustee also takes the position, however, that the lease was rejected under section 1322(b)(7) of the Code. Section 1322(b)(7) provides that a Chapter 13 plan may "subject to section 365 of this title, provide for the assumption, rejection, or assignment of any executory contract or unexpired lease of the debtor...." 11 U.S.C. § 1322(b)(7). The trustee contrasts a rejection of an unexpired lease under section 1322 with a rejection under section 365 as to whether court approval of the rejection is required to render the proposed action effective.

Section 365 of the Code provides that a proposed rejection of an unexpired lease is subject to court approval. 11 U.S.C. § 365(a). A court hearing on the proposed rejection of the unexpired lease is required as the action is a contested matter. R.Bankr.P. 6006(a), (c); R.Bankr.P. 9014. In the case *sub judice*, this Court did not approve a rejection of the lease. The trustee asserts, however, that a rejection of an unexpired lease under section 1322(b)(7) requires no court approval, citing *Benevides v. Alexander*, 670 F.2d 885, 888, 8 B.C.D. 1325, 1328 (9th Cir.1982). The trustee further contends that the election to reject was made "when the original petition was filed herein under Chapter 13 of the Code" and that in the plan filed on March 25, 1982 "the Debtors did therein expressly reject the lease of the business premises...." Thus, it is the trustee's position that the lease was rejected upon the filing of the Chapter 13 Plan.

In *Benevides*, the Ninth Circuit Court of Appeals did indicate that the provisions of Chapter 13 do not make a Chapter 13 rejection of an unexpired lease subject to court discretion. *Benevides v. Alexander*, 670 F.2d at 888, 8 B.C.D. at 1328. The *Benevides* decision, however, cannot be read to stand for the proposition that an unexpired lease may be rejected merely upon the fil-

ing of a Chapter 13 Plan. In fact, the Ninth Circuit prefaced its holding that an unexpired lease may be rejected without court approval only "once certain conditions have been met." *Id.*, 670 F.2d at 888, 8 B.C.D. at 1327. One of the conditions which the Ninth Circuit recognized was confirmation of the Chapter 13 plan. *Id.*, 670 F.2d at 888, 8 B.C.D. at 1328. Moreover, the *Benevides* court determined that court approval of a rejection of a lease contained in a proposed Chapter 13 plan was irrelevant as to whether the plan should be confirmed. *Id.* The rights and liabilities of the parties are not affected until the Chapter 13 Plan is confirmed. 11 U.S.C. § 1327(a); *see* 5 *Collier on Bankruptcy* ¶ 1327.01, at 1327-1 to 1327-2 (15th ed. 1984).

■ Thus, it is apparent that the lease was not rejected by the mere filing of the Chapter 13 Plan. Furthermore, the plan filed on March 15, 1982 which rejected the lease was never confirmed. The plan that was confirmed by order of this Court entered August 10, 1982 was the debtors' third plan which was filed June 4, 1982. The confirmed plan did reject the lease but, at the same time, provided for a priority payment of administrative rent for three months at $900.00 per month. Pursuant to a motion for reconsideration, however, the aforementioned order of confirmation was revoked. The final Plan confirmed in this case was filed November 15, 1982. In that plan, no executory contracts or unexpired leases were rejected. Thus, at the time that this case was converted to a case under Chapter 7, the lease had not been rejected or assumed. Furthermore, since conversion of the case on February 18, 1983, the trustee has taken no step to reject the lease. As a result, the lease is deemed rejected sixty days after the entry of the conversion order, April 19, 1983.[2] 11

---

**2.** Section 365(d)(1) of Title 11 of the United States Code states that if a Chapter 7 trustee does not assume or reject a lease of the debtor within sixty days of the order for relief, the contract is deemed rejected. 11 U.S.C. § 365(d)(1). The order for relief is to be read

as the conversion order. 11 U.S.C. § 348(c). Congress amended § 365(d)(1) to read "assume or reject an executory contract or unexpired lease of residential real property or of personal property of the debtor ..." by enacting the Bankruptcy Amendments and Federal Judge-

U.S.C. § 365(d)(1); 11 U.S.C. § 348(c). Thus, for the three-month period during which the landlord makes a claim for administrative rent, the equipment and fixtures were property of the estate and the lease had not been rejected.

■ There is no doubt but that a landlord is entitled to an administrative claim for post-petition rent for leased premises if the claim is a constituent of "the actual, necessary costs and expenses of preserving the estate...." 11 U.S.C. § 503(b)(1)(A). This administrative claim is wholly separate and apart from the damages which can be claimed under section 502(g) of the Code because of a trustee's rejection of a lease. Additionally, the several courts which have allowed an administrative priority for post-petition rent have not required court approval prior to the expense being incurred although court approval of the nature and the amount of the claim is mandatory. *See, e.g., Matter of Hearth & Hinge, Inc.,* 28 B.R. 595, 597 (Bankr.S.D.Ohio 1983); *In re Kors, Inc.,* 13 B.R. 683, 684–85 (Bankr. D.Vt.1981); *In re Jarvis Kitchenware of D.C., Inc.,* 13 B.R. 230, 231 (Bankr.D.C. 1981); *Matter of Ruby's Florida, Inc.,* 11 B.R. 171, 175 (Bankr.M.D.Fla.1981).

■ In this case, the bakery equipment and fixtures were property of the estate from the filing of the petition until May 10, 1982 when the equipment and fixtures were awarded to the secured creditor by order of this Court. The argument that the estate received no benefit from the storage of the equipment and fixtures in the leased premises because the debtor had no equity in the property is not supportable. Initially, no property of the estate may be disposed of without a determination and an authorization by this Court. Secondly, the debtor would still have the duty to protect his property until the parties' respective rights were adjudicated even absent any equity in the property. *In re Royal International Corp.,* 30 B.R. 750, 752 n. 7 (Bankr.W.D.Ky.1983).

■ The actual and necessary costs of preserving the estate in the instant case is the fair rental rate pro rated for the period the premises were used. *Philadelphia Co. v. Dipple,* 312 U.S. 168, 174, 61 S.Ct. 538, 541, 85 L.Ed. 651 (1941); *In re Standard Furniture Co.,* 3 B.R. 527, 530 (Bankr.S.D. Cal.1980). In the instant case, the premises were used to store property of the estate until May 10, 1982, at which time this Court awarded the property to the secured creditor, thereby releasing the property from the estate. Absent any evidence to the contrary, the majority view indicates that the fair rental rate is the contract rental rate rather than a rental value determined by the specific use of the premises. *Kneeland v. American Loan & Trust Co.,* 136 U.S. 89, 102–03, 10 S.Ct. 950, 954–55, 34 L.Ed. 379 (1890); *In re Royal International Corp.,* 30 B.R. at 752; *Matter of Fred Sanders Co.,* 22 B.R. 902, 906–07 (Bankr.E.D.Mich.1982).

The landlord makes an administrative claim of $2,835.00 for three months rent. This is an average of $945.00 per month, and in response to interrogatories, the landlord indicated that this amount was the monthly rent. An examination of the lease agreement entered into by the debtors and the landlord on November 19, 1980 indicates otherwise. For the rental period commencing December 15, 1980 and ending December 31, 1981, the rental payment was $850.00 per month. Paragraph J of the lease agreement indicates that if the lease is renewed for a second year the monthly rent would be $900.00. The first option year would encompass the year 1982 during which debtors filed their petition in bankruptcy. Additionally, as indicated above, the premises were not used to store assets of the estate for the full three-month period for which the landlord applies. Thus, the proper amount of the administrative claim under section 503(b)(1)(A) is $1,995.80. This figure is the product of the number of days the premises were used to store property of the es-

---

ship Act of 1984, Pub.L. No. 98–353, Title III (1984). Of course, the effective date of the

amendment was eighteen months after the actions in the instant case.

tate, sixty-eight, and the average *per diem* rental for that period, $29.35. The *per diem* rental is determined by dividing the total rent due for the full three months over portions of which the premises were used to store property of the estate, $2,700.00, by the total number of days in the same three-month period, ninety-two. The conversion of the case to a case under Chapter 7 would not affect this priority claim in that a claim under section 503(b) is exempted specifically from the effect of section 348(d).[3] Thus, consistent with the aforegoing, Andrew Neyman shall be accorded a priority claim of $1,995.80 under section 503(b)(1)(A).

An Order shall enter.

---

**3.** 11 U.S.C. § 348(d) provides:

A claim against the estate or the debtor that arises after the order for relief but before conversion in a case that is converted under section 1112 or 1307 of this title, *other than a claim specified in section 503(b) of this title,* shall be treated for all purposes as if such claim had arisen immediately before the date of the filing of the petition. *Id.* (emphasis added).