FERGUSON, Circuit Judge:
 

 Defendant Alexander entered into a deposit receipt sales contract to sell her house to plaintiffs, the Benevides, for the sum of $73,000 under certain conditions to be met in 60 days. Plaintiffs deposited $1,000 in escrow, the balance being payable in 60 days.
 

 On the date for closing, plaintiffs deposited additional funds necessary to close, and had a loan commitment from Bank of America for the balance. Thus, plaintiffs tendered full performance. Although plaintiffs tendered performance, the defendant refused to convey title or surrender possession. The Benevides then brought an action for specific, performance in state court. On the day that the trial was finally scheduled, defendant filed a petition for bankruptcy under Chapter 13 (Adjustment of Debts of an Individual with Regular Income). The filing of the Chapter 13 petition automatically stayed plaintiffs’ state court action.
 

 The defendant’s Chapter 13 Plan provided,
 
 inter alia,
 
 as follows:
 

 4. The debtor(s) elect(s) to reject the following executory contracts:
 

 Ronald R. Benevides and Karole L. Benevides:
 

 the contract upon which their claim rests.. . .
 

 The proposed plan was confirmed by the bankruptcy judge.
 

 Plaintiffs then began an adversary proceeding in bankruptcy seeking relief from the stay of their state court action. Defendant argued that the sales contract was executory within the meaning of the new Bankruptcy Code and that the contract could therefore be rejected. However, the bankruptcy court concluded that “when performance has been tendered as it has here by plaintiff, the contract is no longer executory in the bankruptcy sense that permits rejection by the debtor.” The court also held that the right to reject executory contracts exists only for the benefit of creditors, not for the benefit of the debtor. Defendant filed a timely notice of appeal from the bankruptcy court judgment. The district court affirmed.
 

 The issues are:
 

 1. Was the deposit receipt agreement for sale of real property an executory contract within the meaning of the Bankruptcy Code?
 

 
 *887
 
 2. Did the debtor have the right to reject the executory contract?
 

 I. A DEPOSIT RECEIPT AGREEMENT FOR SALE OF REAL PROPERTY IS AN EXECUTORY CONTRACT WHERE THE SELLER HAS NOT CONVEYED TITLE OR SURRENDERED POSSESSION AND THE BUYER HAS NOT PAID THE FULL PURCHASE PRICE.
 

 A chapter 13 plan may provide for the assumption or rejection of any executory contract of the debtor not previously rejected under section 365 of title 11. 11 U.S.C. § 1322(b)(7). In the instant case, the defendant’s right to reject the contract at issue depends on whether the contract is executory within the meaning of the Bankruptcy Code.
 

 Nowhere does the Code define the phrase “executory contract.” However, Notes of Committee on the Judiciary, Senate Report No. 95-989, U.S.Code Cong. & Admin.News 1978, pp. 5787, 5844, observes with regard to 11 U.S.C. § 365 (Executory Contracts and Unexpired Leases):
 

 Though there is no precise definition of what contracts are executory, it generally includes contracts on which performance remains due to some extent on both sides.
 

 This definition is similar to an often cited definition of the meaning of executory contract under the former Bankruptcy Act:
 

 [A] contract under which the obligation of both the bankrupt and the other party to the contract are so far unperformed that the failure of either to complete the performance would constitute a material breach excusing the performance of the other.
 

 Countryman,
 
 Executory Contracts in Bankruptcy: Part I,
 
 57 Minn.L.Rev. 439, 460 (1973),
 
 cited in In re Chicago, Rock Island & Pacific R. R. Co.,
 
 604 F.2d 1002, 1004 (7th Cir. 1979);
 
 In re Knutson,
 
 563 F.2d 916, 917 (8th Cir. 1977).
 

 In light of the above definitions, the deposit receipt sales agreement remained executory. The agreement remained substantially unperformed: plaintiff still had to pay the remainder of the purchase price, and defendant had to give up possession and convey title. Undoubtedly, the contract remained so far unperformed that failure of either side to complete performance by conveying title or paying the purchase price would have constituted a material breach.
 
 [1]
 

 The contract did not cease to be executory when there was a tender of performance. Performance or the rendering of performance, not just tender of performance, is required. For example,
 
 In re Sun Ray Bakery, Inc.,
 
 5 B.R. 670 (Bkrtcy.D.Mass.1980), held that a consignment agreement under which a debtor-bakery had an obligation to consign and deliver products for distribution was an executory contract, even though the consignees had made full payment for exclusive distributorship rights. The court explained, “In the instant case, in spite of full payment for the exclusive distributorship rights, if the contracts continued in effect, respondents [consignees] still had material obligations.”
 
 Id.
 
 at 672. Applying that rule to the present case, even after the buyers’ tender of perform-
 
 *888
 
 anee, material obligations would remain to be performed; therefore, the contract in the present case is executory.
 

 In re Knutson,
 
 563 F.2d 916 (8th Cir. 1977), held that a debtor’s contract for the purchase of airline tickets that he had not paid for remained executory. The non-bankrupt airline had not fully performed because it had a remaining obligation to transport the buyer. The court distinguished the case “from a situation where the nonbankrupt party has
 
 fully rendered his performance
 
 .... ”
 
 Id.
 
 at 917 (emphasis added). The court also found it significant that “neither party had received any benefit under the contract .. .,”
 
 id.
 
 at 917, a consideration that is relevant to the instant case where, as yet, the debtor has received no real benefit from the land sales contract.
 

 There is no need to look at state law for the meaning of “executory contract.” As Professor Countryman observed, there was no need for a statutory definition of “executory contract” under the former Bankruptcy Act, because the courts “seem to have experienced little difficulty in fashioning a definition of executory contracts that is both workable and consistent with the apparent policy of those provisions of the Bankruptcy Act dealing with such contracts.” Countryman,
 
 Executory Contracts in Bankruptcy: Part II,
 
 58 Minn.L.Rev. 479, 563 (1974). Perhaps because the federal courts had fashioned a definition of execu-tory contracts, the drafters of the new Bankruptcy Code found it unnecessary to define the term. Even if this court were to follow plaintiffs’ suggestion and allow state law to govern the meaning of executory contract, the outcome would not be affected in this case. The California rule cited by plaintiffs addresses the situation where substantial performance has been rendered on a personal services contract,
 
 Stone v. Burke,
 
 110 Cal.App.2d 748, 756, 244 P.2d 51 (1952) (substantial performance of personal service contract allows employee to have benefit of employer’s obligation), and does not shed light on the issue in this case.
 

 In sum, the deposit sales agreement remained executory within the meaning of the Bankruptcy Code despite the tender of performance.
 

 II. UNDER CHAPTER 13 OF THE BANKRUPTCY CODE, THE DEBTOR COULD REJECT THE EXECU-TORY CONTRACT.
 

 The bankruptcy court held that the right to reject the executory contract existed only for the benefit of creditors, not for the benefit of the debtor. At the outset, however, the point must be made that Chapter 13 does not subject the rejection of an exec-utory contract to the bankruptcy court’s discretionary approval once certain conditions have been met.
 

 This point is illuminated by comparing 11 U.S.C. § 365 (Executory contracts and unexpired leases) with 11 U.S.C. § 1322 (Contents of plan under Chapter 13). Section 365(a) subjects the trustee’s rejection of an executory contract to the court’s approval. In contrast, § 1322(b)(7) provides that a Chapter 13 plan “may provide for the assumption or rejection of any executory contract or unexpired lease of the debtor not previously rejected under section 365 of this title.” By its terms, § 1322(b)(7) provides that rejection under Chapter 13 operates apart from any rejection under § 365. Confirmation of the Chapter 13 plan is merely subject to the proviso in § 1325 that
 

 (a) The court shall confirm a plan if—
 

 (1) the plan complies with the provisions of this chapter and with other applicable provisions of this title ....
 

 Thus, confirmation of the plan becomes mandatory when (1) it complies with the provisions of Chapter 13 and (2) it complies with other applicable provisions of the title. Nowhere do the provisions of Chapter 13 make a Chapter 13 rejection of an executo-ry contract subject to the court’s discretion. Furthermore, other provisions of Title 11, in particular, § 365, do not apply to the matter of confirming the Chapter 13 plan, because § 1322(bX7) provides that a Chapter 13 rejection operates apart from a rejection under § 365. This analysis leads to a simple conclusion: Once a Chapter 13 plan provides for the rejection of a genuine exec-utory contract, the court’s approval of that
 
 *889
 
 rejection is not required by the language of Chapter 13.
 

 The legislative history of Chapter 13 clearly reflects that one purpose of that chapter is to enable the debtor to make a fresh start. H.R.Rep.No.95-595, 95th Cong., 1st Sess. 117-18 (1977). It is consistent with the spirit of Chapter 13 that rejection under § 1322 may be exercised for the benefit of the debtor, as well as for the benefit of the creditor.
 

 CONCLUSION
 

 In the present case, the debtor proposed the rejection of the executory contract in her plan. Any plan that complies with the provisions of § 1325 (Confirmation of plan) shall be confirmed. The plan was originally confirmed. The subsequent adversary proceeding concluded incorrectly that the contract was not executory. Because the contract was executory, the defendant should have been allowed to reject it.
 

 The decision of the district court is REVERSED, and the case is REMANDED for proceedings not inconsistent with this opinion.
 

 [1]
 

 . In fact, defendant may have breached the contract by refusing to convey, but the fact of breach does not somehow convert the executo-ry contract into an executed contract. Professor Countryman explains the effect of a pre-bankruptcy material breach:
 

 A material breach by a party to an executo-ry contract before the bankruptcy of either party gives the other party a unilateral option to treat his own obligations under the contract as discharged and claim damages for the breach or to waive the breach and treat the contract as still in effect. This option of the nondefaulting party is qualified only to the extent that some provision of the contract or some provision of the applicable non-bankruptcy law gives to the defaulting party a right to cure the default.
 

 Countryman,
 
 Executory Contracts in Bankruptcy: Part II,
 
 58 Minn.L.Rev. 479, 506-07 (1974) (footnotes omitted). Applying the above principles to the instant case, plaintiffs, the nonde-faulting party, by not suing for damages, treated the contract as still in effect. Their suit for specific performance, which merely treats the contract as in effect, doesn’t affect its executo-ry quality.