**In re Veronica Ann MEEHAN, Debtor.**

**Bankruptcy No. 884–41341–20.**

United States Bankruptcy Court,
E.D. New York,
at Westbury.

Jan. 30, 1985.

Ganz, Hollinger & Towe, New York City, for debtor; Steven Ciardiello, New York City, of counsel.

Gold & Wachtel, New York City, for Paul and Susan Bregman; Steven Cohen, New York City, of counsel.

Michael Macco, Melville, N.Y., Trustee.

ROBERT JOHN HALL, Bankruptcy Judge.

This motion was commenced by Paul and Susan Bregman, two creditors of Veronica Ann Meehan, the chapter 13 debtor herein. The motion seeks, *inter alia*, termination of the automatic stay, dismissal of the debtor's petition, and an order declaring that the debtor's plan shall not be confirmed. The motion was heard before this court on November 13, 1984 and the court reserved decision. For the reasons set forth below, the court hereby modifies the automatic stay to permit the Bregmans to obtain and execute upon the judgment contemplated by a decision of Justice Beatrice S. Burstein of the New York State Supreme Court, Nassau County, to the extent that the decision grants the Bregmans specific performance of a contract for the sale of the debtor's real property and awards them an abatement in the payments to be made under a purchase money mortgage. The court sees no reason, however, why the stay should not remain applicable to that portion of Justice Burstein's decision awarding the Bregmans damages in the sum of $327. In addition, the court rules that the debtor's amended plan as it presently stands, can not be confirmed due to the provision contained therein rejecting the contract of sale between the debtor and the Bregmans.

FACTUAL CONTEXT

Essentially the facts are undisputed. On February 5, 1983, Ms. Meehan and the Bregmans entered into a written contract for the sale and purchase of Ms. Meehan's residence in Syosset, New York for $200,-000. The contract of sale provided for a payment of the purchase price in three units. The Bregmans were to pay a deposit of $20,000 to Ms. Meehan upon the signing of the contract, which sum was to be held in escrow (said sum was indeed paid and is being held in escrow). At closing the Bregmans were to pay $120,000 and Ms. Meehan was to extend to them a $60,-000 purchase money mortgage. The contract of sale was conditioned upon the Bregmans obtaining a mortgage commitment in an amount not less than $100,000. The Bregmans did in fact receive such a commitment from a local private lender.

On or about April 26, 1983, Ms. Meehan breached the contract of sale. In June 1983, the Bregmans commenced an action in New York State Supreme Court, Nassau County seeking specific performance of the contract and money damages. By Order dated November 14, 1983, Justice Alexander Vitale, sitting in Special Term, Part I, of the Supreme Court granted the Bregmans' motion for summary judgment as to breach of contract, and ordered an immediate trial to determine the nature and scope of the remedy. After several pre-trial maneuvers were unsuccessfully pursued by Ms. Meehan, Justice Beatrice S. Burstein presided over a two day trial held on February 9 and 10, 1984.

Justice Burstein issued a written decision dated July 25, 1984 in which the Bregmans were granted, *inter alia*, specific performance of the contract of sale for Ms. Meehan's premises and an abatement in the monthly purchase money mortgage payments. The latter relief was awarded in order to compensate the Bregmans for the increase in the mortgage interest rate arising from the delay resulting from Ms. Meehan's breach.

Justice Burstein based her decision to award the Bregmans specific performance in part upon the fact that the house the Bregmans agreed to purchase was specifically chosen for various and valid reasons:

Plaintiffs, a young couple who are about to have their first child, resided in a rented apartment. They searched for a home for a considerable period of time, concentrating almost exclusively in three towns located in one area of Long Island, close to both their places of employment and their families and within a school district they considered suitable. On February 5, 1983, some three months after plaintiffs first viewed defendant's home, and six weeks after defendant first considered selling the property to plaintiffs, they entered into a contract of sale.

*Bregman v. Meehan,* 125 Misc.2d 332, 479 N.Y.S.2d 422 (N.Y.Sup.Ct.1984). In a painstakingly thorough decision, Justice Burstein weighed the equitable considerations on behalf of both the Bregmans and Ms. Meehan and concluded that the Bregmans were entitled to specific performance. The Judge directed the parties to settle a proposed judgment on notice. The Bregmans settled an order which was to be presented to Justice Burstein on August 29, 1984. Apparently the judgment was never signed due to Ms. Meehan's filing of her bankruptcy petition on August 24, 1984.

In her petition, the debtor indicated that her home at the time of filing had a market value of $325,000. Ms. Meehan filed her first chapter 13 plan on October 3, 1984. With respect to the Bregmans, the plan provided for the return of the Bregmans' $20,000 deposit, the rejection of the contract of sale, and the payment to the Bregmans of $57.00 per month for 60 months. The latter provision, which totals to payment of $3,420 over 60 months, is presumably payment in lieu of the $58 per month abatement in the purchase money mortgage payments and the relatively nominal money damages awarded by Justice Burstein. Ms. Meehan filed an amended chapter 13 plan on November 7, 1984 which included an additional provision not relevant here.

## DISCUSSION

11 U.S.C. § 362(d) provides that the court shall grant relief from the section 362 stay "for cause." The Bregmans have demonstrated such cause as to compel this court to grant relief from the stay to permit the Bregmans to enforce all aspects of Justice Burstein's decree except that portion awarding $327 in money damages. Essentially, this court believes that Ms. Meehan is not permitted to avoid the executory contract in question, and that it would be inequitable to permit the debtor to further delay the Bregmans from enforcing their rights afforded under New York State law.

■ 11 U.S.C. § 1322(b)(7) permits the debtor's plan to provide for the rejection of

an executory contract. The court shall confirm the debtor's plan if, *inter alia,* the plan "complies with the provisions of this chapter *and with other applicable provisions of this title.*" 11 U.S.C. § 1325(a)(1) (emphasis added). Thus, as the parties have recognized in their legal memoranda, the provisions of 11 U.S.C. § 365, the section of the code regulating executory contracts, set the standards for, and determine the legal consequences of, the assumption and rejection of executory contracts under the terms of a chapter 13 plan. *See* 5 *Collier on Bankruptcy* ¶ 1322.01[1][G][ii] at 1322–13 (15th ed. 1983).

Over the years, the courts have set forth the standards which must be met by debtors and trustees before the court will approve the rejection of the various types of executory contracts. *See e.g. N.L.R.B. v. Bildisco,* —— U.S. ——, 104 S.Ct. 1188, 1195–97, 79 L.Ed.2d 482 (1984) (somewhat stricter standard than "business judgment" standard applies to approval of rejection of collective-bargaining agreement); *Control Data Corp. v. Zelman,* 602 F.2d 36, 42–43 (2d Cir.1979) (*In re Minges*) (examining the evolution of the "business judgment" test from the stricter "burdensome" test); 2 *Collier on Bankruptcy* ¶ 365.10 (15th ed. 1984) (courts have adhered to the stricter "burdensome" test before approving rejection of executory contracts for the sale of real property).

## IS COURT APPROVAL NECESSARY BEFORE THE DEBTOR MAY REJECT THE CONTRACT OF SALE UNDER HER CHAPTER 13 PLAN?

Before setting forth the relevant standards and applying them to the facts at bar, the court feels obligated to discuss an issue not raised by the parties. A three judge panel of the Ninth Circuit Court of Appeals in *Benevides v. Alexander,* 670 F.2d 885, 888–89 (9th Cir.1982) (*In re Alexander*) held that the rejection of an executory contract under 11 U.S.C. § 1322(b)(7) is not subject to section 365, including the requirement found therein that rejection is subject to court approval. The facts in *Alexander* directly parallel the facts in the

instant case, except for the minor variation that the debtor in *Alexander* commenced her chapter 13 case before the trial in the purchasers' state court action for specific performance had begun. The bankruptcy court had granted the purchasers relief from the automatic stay because rejection of the executory contract offered no benefit for the debtor's creditors. The district court affirmed. *Id.* at 886. The Circuit Court believed that "by its terms, § 1322(b)(7) provides that rejection under Chapter 13 operates apart from any rejection under § 365." *Id.* at 888. The Circuit Court further supported its view that section 365 was not applicable to confirmation of a chapter 13 plan by noting the oft-cited proposition found in the legislative history of the 1978 Act that one purpose of chapter 13 is to enable the debtor to make a fresh start. *Id.* at 889 (citing H.R.Rep. No. 95–595, 95th Cong. 1st Sess. 117–18 (1977)), U.S. Code Cong. & Admin.News 1978, p. 5787.

With all due respect, this court disagrees with the holding in *Alexander*, and believes that 11 U.S.C. § 1322(b)(7) must be read in *pari materia* with 11 U.S.C. § 365. Section 1322(b)(7) allows a chapter 13 plan to "provide for the assumption or rejection of any executory contract or unexpired lease of the debtor not previously rejected under section 365 of this title." Nowhere in the terms of this statutory provision is rejection under a Chapter 13 plan divorced from the standards and legal consequences set forth by section 365.[1] In fact, 11 U.S.C. § 1325(a), the section of the bankruptcy code setting forth the prerequisites to confirmation of the chapter 13 plan, provides that the plan must comply with "the provisions of this chapter and with other applica-

ble provisions of this title." 11 U.S.C. 1325(a)(1). Chapter 3 of Title 11, the chapter in which section 365 is found, is expressly made applicable to cases under chapter 13. 11 U.S.C. § 103(a).

*Collier* states its contrary position to the *Alexander* holding rather matter of factly, just as this court would have if *Alexander* had not come to the court's attention:

> The provisions of section 365 determine the legal consequences of the assumption or rejection of an executory contract or unexpired lease under the terms of a chapter 13 plan.

5 *Collier on Bankruptcy* ¶ 1322.01[1][G][ii] at 1322–13 (15th ed. 1983). Likewise, the debtor's affirmation in opposition implicitly supports this position, in that it argues that the Bregmans' rights are limited to those set forth in several subsections of § 365. The debtor accordingly cites section 365(a):

> (a) [T]he trustee, subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor;

as well as section 365(j):

> (j) [A] party whose executory contract to purchase real property from the debtor is rejected and under such party is not in possession, has a lien on the interest of the debtor in such property for the recovery of any portion of the purchase price that such purchaser or party has paid.

Also applicable to the facts before the court is section 365(g):

> (g) Except as provided in subsections (h)(2) and (i)(2) of this section, the rejection of an executory contract or unexpired lease of the debtor constitutes a breach of such contract or lease—

---

1. If the debtor's petition had been filed after October 10, 1984, this issue would be merely academic. Section 528(b) of the Bankruptcy Amendments and Federal Judgeship Act of 1984 [P.L. No. 98–353, 98 Stat. 333 (July 10, 1984)] clarified 11 U.S.C. 1322(b)(7) by adding "subject to section 365 of this title" to the beginning of the subsection, said amendment to be effective as to cases filed 90 days after the date of enactment (July 10, 1984). *See* section 553(a) of P.L. No. 98–353. The commentary to section 1322

found in *Collier's* 1985 Pamphlet Edition of the Bankruptcy Code indicates that the changes to subsection (b)(7) were merely technical. The court's research reveals that the legislative history to the 1984 Act does not illuminate the reasons for the addition of this language, leading the court to agree with Collier that the technical amendment merely clarified existing law. *Cf. In re Barrington Oaks General Partnership*, 15 B.R. 952, 970 n. 40 (Bankr.D.Utah 1981) (technical amendments clarified code section).

(1) if such contract or lease has not been assumed under this section or under a plan confirmed under chapter 9, 11, or 13 of this title, immediately before the date of the filing of the petition.

Thus, an analysis of the debtor's attempt to reject the contract of sale under section 365 would involve (1) the standards developed by the courts for determining whether court approval is warranted (§ 365(a)); (2) the extent to which a lien is obtained by the purchasers for the recovery of a deposit (§ 365(j)); and (3) the extent of pre-petition damages flowing from the rejection of such contract (§ 365(g)(1) and § 502(g)).

If this court were to take the position of the *Alexander* court, *i.e.*, that rejection under section 1322(b)(7) is not subject to section 365, what body of law would govern the legal consequences of the rejection? Should the court incorporate all of the precepts found in section 365 except the standards developed by the courts under section 365(a), the requirement for court approval? Should the purchasers be relegated to unsecured creditors receiving return of only a percentage of their deposit? Should a chapter 13 business debtor be able to shirk the responsibilities laid down in the Supreme Court's recent *Bildisco* decision pertaining to rejection of collective bargaining agreements, by rejecting such an agreement under a chapter 13 plan rather than by a section 365 motion? *See In re Hoyt*, 27 B.R. 13, 14–15 (Bankr.D.Ore.1982) (applying section 365 standards to rejection under chapter 13 plan of collective bargaining agreement between union and debtor-sole proprietor).

The court believes that the design of Title 11 calls for a reading of section 1322(b)(7) in *pari materia* with all of section 365's precepts. To do otherwise will remove statutory guidelines to the assumption and rejection of executory contracts that appear essential to protecting the rights of the parties to such contracts. Furthermore, the terms of section 1322(b)(7) do not give the debtor the affirmative power to reject executory contracts,

but merely state that a provision for an executory contract's rejection may be included in a plan. The binding effect of the plan, *see* 11 U.S.C. § 1327(a), occurs only upon confirmation of the plan by the court, an event that shall occur only if the plan complies with all applicable provisions of Title 11. *See* 11 U.S.C. § 1325(a)(1).

## MAY THE COURT APPROVE THE DEBTOR'S REJECTION OF THE CONTRACT OF SALE?

As noted above, the courts have developed standards applicable to the rejection of executory contracts. The Second Circuit in *Control Data Corp. v. Zelman*, 602 F.2d 38, 42–43 (2d Cir.1979) (*In re Minges*) surveyed the evolution of the "business judgment" test from the stricter "burdensome" test and adopted the business judgment test as the law for this circuit. Under the "burdensome" test, an executory contract could not be rejected as long as the contract provided the estate with some profit; the possibility of a greater profit resulting from rejection was immaterial. *Id.* at 42. The "business judgment" test on the other hand, emphasized whether rejection would result in greater benefit for the debtor's creditors. *Id.* at 43. In adopting the "business judgment" test, the *Control Data* court reasoned:

> [I]n bankruptcy proceedings, the trustee, and ultimately the court, must exercise their discretion fairly in the interest of all who have had the misfortune of dealing with the debtor. A rigid test, permitting rejection only where the executory contract will cause a net loss to the debtor's estate if performed, might work a substantial injustice in cases where it can be shown that the non-debtor contracting party will reap substantial benefits under the contract while the debtor's creditors are forced to make substantial compromises of their claims.

*Id.*

Under the business judgment test, the bankruptcy judge must determine whether the general creditors of the debtor will benefit. *Id.* at 44. The *Control Data* case involved the rejection of a lease for

office space. There does not appear to be any reason why the stricter burdensome test should be employed where the contract involves the sale of property other than a lease. *See Robertson v. Pierce*, 23 B.R. 798, 800 (Bankr. 9th Cir.1982) (*In re Huang*) (business judgment test controls rejection of contract to sell real property); *contra 2 Collier on Bankruptcy* ¶ 365.10 (15th ed. 1984) ("[C]ontracts for the sale of real property are an area of executory contract law where judicial concern for innocent third parties, e.g. the vendee, has led to fairly strict application of a requirement that the contract be shown to be burdensome, particularly since rejection may result in a windfall to an undeserving party.").

■ As appears in the above quote from the *Control Data* case, the business judgment test requires the court to exercise its discretion fairly in the interests of all who have dealt with the debtor. 602 F.2d at 43. Thus, the "business judgment" test as envisioned by the Second Circuit leaves room for the court to consider as a factor in approving the rejection of a contract of sale of real property, the rights of vendees and other affected parties.

■ The primary issue when applying the "business judgment" test is whether rejection would benefit the general unsecured creditors, with resolution of this issue possibly involving a balancing of interests. *Robertson v. Pierce*, 23 B.R. 798, 801 (Bankr. 9th Cir.1982) (*In re Huang*) (citing *Control Data*, 602 F.2d at 43). The court may refuse to authorize rejection where the party whose contract is to be rejected would be damaged disproportionately to any benefit to be derived by the general creditors of the estate. *Robertson*, 23 B.R. at 801. However, the disappointment of a vendee's expectations is not a sufficient ground standing alone to deny permission to reject. As the *Robertson* court observed:

> Any rejection will inevitably entail the disappointment of legitimate expectations. A basic policy of the Bankruptcy laws is to spread the burdens evenly among both those who may have loaned the debtor money and those who might have obtained a profit from dealing with him.

*Id.*

■ If rejection of the contract will not result in unsecured creditors receiving a greater amount on their claims (e.g. the estate is solvent and the unsecured creditors will receive 100 percent of their claims without resort to rejection) rejection may be disapproved. As stated by the Ninth Circuit Appellate Panel in *Robertson:*

> We do not doubt that if in the judgment of the bankruptcy court, an estate is solvent in the sense that a 100 percent payout will occur in the event of liquidation, that it is within the discretion of the court to decline to authorize rejection of a contract on the grounds that no benefit would accrue to the creditors from rejection.

23 B.R. at 803.

Without regard to rejection of the contract of sale, Ms. Meehan's estate is certainly solvent. The contract of sale provides for Ms. Meehan's receipt of $200,000 in exchange for her house, $20,000 of which has already been paid, with $120,000 due at closing, and the remainder to be paid pursuant to the purchase money mortgage and note. Considering only the $120,000 due on closing, Ms. Meehan's estate is more than adequate to satisfy her $10,000 homestead exemption, the $25,942.56 that was due on her mortgage at the time of filing, and the $11,435.80 listed as unsecured debt. With or without rejection, Ms. Meehan's creditors will be paid 100% of their claims. 11 U.S.C. 1325(a)(4).[2] Thus,

---

**2.** 11 U.S.C. § 1325(a)(4) provides that chapter 13 unsecured creditors must receive over the life of the plan, at least as much as they would have received upon a hypothetical chapter 7 liquidation on the chapter 13 plan confirmation date.

If the court were to permit rejection, the debtor would have a $325,000 house, but her debts would be greatly increased. In addition to the $25,942.50 mortgage balance and the $11,435.80 listed unsecured debt, Ms. Meehan would be liable after rejection pursuant to 11 U.S.C.

rejection of the contract of sale will not benefit unsecured creditors and the court may decline to authorize rejection of the contract.

The intent of Congress that bankruptcy courts should give deference to state law where appropriate is clearly evidenced by 28 U.S.C. § 1334(c), which permits the court to allow a matter to proceed in a state forum "in the interest of justice, or in the interest of comity with State courts or respect for State law...." *See also* former 28 U.S.C. 1471(d) (repealed 1984). Similarly, "cause" under 11 U.S.C. § 362 may include "the desire to permit an action to proceed to completion in another tribunal." H.R.Rep. No. 595, 95th Cong., 1st Sess. 343–44 (1977); *cf.* S.Rep. No. 989, 95th Cong., 2d Sess. 52–53 (1978), U.S.Code Cong. & Admin.News 1978, p. 6300. The court shall determine from the particular facts of each request to vacate the stay whether relief is appropriate. *Id.*

■ The particular facts in the matter at bar certainly warrant that the Bregmans be afforded relief from the stay in order to consummate their purchase of Ms. Meehan's property. The simple fact that Ms. Meehan may not reject the contract of sale constitutes sufficient cause to lift the stay. Ms. Meehan has not demonstrated any reason why the stay should continue. Ms. Meehan, as the party opposing relief from the stay, carries the burden of proof. 11 U.S.C. § 362(g)(2). The facts before the court show that Ms. Meehan undoubtedly filed her chapter 13 petition in order to reject the subject contract of sale. After losing repeatedly in the state courts on this issue, she attempted to take advantage of the bankruptcy code. Although Ms. Meehan was within her rights to file in order to utilize the sections permitting her to reject executory contracts, unless rejection will serve the purpose of spreading the loss among creditors who obtained a profit from the debtor and those who loaned and

lost, *see Robertson*, 23 B.R. at 801, the debtor should not be permitted to circumvent the rights afforded the Bregmans by the long-established equitable doctrine of specific performance existing under New York State law.

CONCLUSION

The automatic stay is modified to the extent necessary to permit the Bregmans to enforce the equitable decree of Justice Beatrice S. Burstein. The stay as it pertains to the Bregmans shall remain applicable only to that portion of Justice Burstein's decision awarding the Bregmans damages in the sum of $327. Ms. Meehan will not be permitted to reject the contract of sale, and her amended plan shall not be confirmed containing a provision to that effect.

Settle Order in accordance herewith.

---

§ 365(g) for damages as if the breach had occurred immediately before filing. Assuming her figure of $325,000 is correct, under New York State law, the Bregmans would be entitled to the benefit of their bargain, *i.e.,* $125,000 in

damages. *See Colonial Diversified, Inc. v. Assured Holding Corp.,* 71 A.D.2d 1011, 420 N.Y. S.2d 419, 420 (App.Div.2d Dept.1979); *Bailey v. Morgan,* 95 A.D.2d 883, 463 N.Y.S.2d 882, 883 (App.Div.3d Dept.1983).