$$+ \quad \frac{\text{Customer B remaining}}{\text{Total remaining}} \quad \times \quad \frac{\text{Total remaining}}{\text{customer property}}$$
unsatisfied claims

$+ \ \$10M$ (full satisfaction).

Subchapter III:

$$\text{Customer A distribution} = \frac{\text{Total customer property}}{\text{Total net equity claims}} \times \text{Customer A net equity claim}$$

$$= \frac{\$500M}{\$1,000M} \times \$10M$$

$$= \$5M$$

$$\text{Customer B} = \frac{\text{Total customer property}}{\text{Total net equity claims}} \times \text{Customer B net equity claim}$$

$$= \frac{\$500M}{\$1,000M} \times \$10M$$

$$= \$5M$$

The results are summarized in the following chart:

| | Trustee's view of SIPA | Subchapter III | Lincoln's view of SIPA |
|---|---|---|---|
| Customer A | $5.5M | $5M | $2.3M |
| Customer B | $5.5M | $5M | $10M |

In re Veronica Ann MEEHAN, Debtor.

Paul BREGMAN and Susan Bregman,
Movants/Appellees,

v.

Veronica Ann MEEHAN (Debtor) and
Michael Macco (Trustee),
Respondents/Appellants.

No. CV 85–1076.

United States District Court,
E.D. New York.

March 26, 1986.

Ganz, Hollinger & Towe by Steven Ciardiello, New York City, for debtor.

Gold & Wachtel by Steven J. Cohen, New York City, for movants/respondents.

Michael Macco, Melville, N.Y., Trustee.

## ORDER

WEXLER, District Judge.

Appellant Veronica Ann Meehan ("Meehan") brings this action appealing an order of United States Bankruptcy Judge Robert John Hall which modified the automatic stay granted Meehan pursuant to 11 U.S.C. § 362 with respect to appellees Paul and Susan Bregman ("the Bregmans") and re-

fused to confirm Meehan's Chapter 13 plan for bankruptcy. For the reasons stated below, the Court affirms Judge Hall's decision.

### I.

On February 5, 1983, Meehan and the Bregmans entered into a contract for the sale and purchase of Meehan's residence in Syosset, New York. The contract provided that, upon its signing, the Bregmans were to put down a $20,000 deposit to be held in escrow. At closing, the Bregmans were to pay $120,000 and Meehan was to extend them a $60,000 purchase money mortgage, for a total of $200,000. The contract was conditioned upon the Bregman's obtaining a mortgage commitment of at least $100,-000. The Bregmans did in fact receive such a commitment and paid the $20,000 into an escrow account.

On or about April 26, 1983, Meehan breached the contract of sale, and, in June 1983, the Bregmans commenced an action in New York State Supreme Court, Nassau County, seeking specific performance of the contract and money damages. After granting the Bregmans' motion for summary judgment and conducting a trial to determine the proper remedy, the Supreme Court awarded the Bregmans specific performance of the contract, an abatement in the monthly purchase money mortgage payments, and $327 in damages. *Bregman v. Meehan*, 125 Misc.2d 332, 479 N.Y.S.2d 422 (N.Y.Sup.Ct.1984).[1]

On August 24, 1984, prior to the signing of a judgment by the Supreme Court, Meehan filed a bankruptcy petition in the United States Bankruptcy Court for the Eastern District of New York, and, on October 3, 1984, filed a Chapter 13 plan.[2] The plan called for the rejection of the contract of sale, return of the $20,000 deposit, and

payment to the Bregmans of $57.00 per month for sixty months.[3] Meehan filed an amended Chapter 13 plan on November 7, 1984 which included an additional provision not relevant to this appeal.

In response to Meehan's filing of a bankruptcy petition and plan, the Bregmans moved the Bankruptcy Court for an order terminating the automatic stay provided by 11 U.S.C. § 362 of enforcement of the Supreme Court's decision, dismissing Meehan's petition, and declaring that her plan would not be confirmed. In an order dated January 30, 1985, Judge Hall ruled that Meehan could not reject the contract and, pursuant to 11 U.S.C. § 362(d), modified the automatic stay so as to permit the Bregmans to obtain and execute upon the judgment contemplated by the New York Supreme Court insofar as the state court decision granted the Bregmans specific performance of the contract and awarded them an abatement in payments under the purchase money mortgage. Judge Hall left the stay in place to the extent that it prevented execution on that portion of the decision which awarded the Bregmans damages. The judge also held that, due to its provision rejecting the contract of sale between Meehan and the Bregmans, Meehan's plan could not be confirmed. *In re Meehan*, 46 B.R. 96 (Bkrtcy.E.D.N.Y.1985).

Meehan then sought leave to appeal to this Court for a stay of the enforcement of Judge Hall's order pending the determination of her appeal. In an order dated May 14, 1985, the Court granted Meehan's leave to appeal but denied her application for a stay of the Bankruptcy Court's order.

### II.

The filing of a petition for bankruptcy acts as an automatic stay against a variety of proceedings, including actions to recover

---

1. The abatement was designed to compensate the Bregmans for the increase in the mortgage interest rate that occurred during the delay resulting from Meehan's breach. The damages were compensation for a $177 credit update and $150 in moving costs.

2. Chapter 13 of the United States Bankruptcy Code concerns "Adjustment of Debts of an Individual with Regular Income."

3. The $57.00 per month payment was presumably designed as a substitute for the purchase money mortgage abatement and damages awarded by the Supreme Court.

a claim against the debtor or to enforce a judgment obtained against him. 11 U.S.C. § 362(a). Upon request of a party in interest and after notice and a hearing, the Bankruptcy Court may, "for cause", terminate, annul, modify, or condition the automatic stay. 11 U.S.C. § 362(d)(1).

11 U.S.C. § 365 grants to a trustee the power, subject to the court's approval, to assume or reject any executory contract or unexpired lease of the debtor. 11 U.S.C. § 1322, which deals with the contents of a Chapter 13 plan for bankruptcy, states that such a plan may "provide for the assumption, assignment, or rejection of any executory contract or unexpired lease of the debtor not previously rejected under [§ 365]." 11 U.S.C. § 1322(b)(7). Finally, a Chapter 13 plan is to be confirmed by the court if a number of requirements are met, including that "the plan complies with the provisions of this chapter [11 U.S.C. § 1301 *et seq.* ] and with the other applicable provisions of this title [11 U.S.C. § 1 *et seq.* ]" 11 U.S.C. § 1325(a)(1).

It is the standards applicable to and the interaction between these provisions that control the outcome of this appeal. Essentially, two questions need to be answered. First, did the Bankruptcy Court have the power to prohibit Meehan from rejecting her contract with the Bregmans, modify the automatic stay, and refuse to confirm her plan because of its provision rejecting the contract? Second, even if the court possessed such power, did it properly exercise this power in the circumstances of this case?

### III.

Judge Hall concluded that Meehan should not be permitted to avoid her contract. He therefore modified the automatic stay "for cause," stating, "The simple fact that Ms. Meehan may not reject the contract of sale constitutes sufficient cause to lift the stay," 46 B.R. at 102, and refused to confirm her Chapter 13 plan. Meehan argues, however, that Judge Hall lacked the power to block the trustee's rejection and thus had no legitimate basis for modifying the stay and failing to confirm the plan.

Meehan asserts that § 1322(b)(7)'s requirement that a Chapter 13 plan provide for the assumption or rejection of executory contracts to which a debtor is a party is distinct and separate from any limitation on a trustee's powers imposed by § 365. A Chapter 13 plan's provision rejecting an executory contract, in other words, is not subject to the Bankruptcy Court's power under § 365 to disapprove a trustee's rejection of such a contract.

Meehan places primary reliance for her proposition concerning the relationship between §§ 365 and 1322 on the Ninth Circuit's opinion in *In re Alexander,* 670 F.2d 885 (9th Cir.1982). *Alexander* presented a situation in many ways similar to the one now before this Court. The plaintiffs and defendant in *Alexander* entered into a contract under which the defendant was to sell her house to the plaintiffs. On the day of closing, the plaintiffs tendered full performance, but the defendant refused to convey title or surrender possession. The plaintiffs brought an action for specific performance in state court and, on the day that trial was scheduled, the defendant filed a petition for bankruptcy under Chapter 13. Defendant's Chapter 13 plan included a provision rejecting her contract with the plaintiffs.

The bankruptcy judge confirmed the proposed plan. The plaintiffs then began an adversary proceeding in bankruptcy seeking relief from the automatic stay of their state court action. The bankruptcy court granted judgment for the plaintiffs and the district court affirmed.

The Ninth Circuit reversed. In confronting the issue of the interaction between §§ 365 and 1322, the court concluded that rejection under Chapter 13 operates apart from any rejection under § 365. The court stated, "Chapter 13 does not subject the rejection of an executory contract to the bankruptcy court's discretionary approval once certain conditions have been met," 670 F.2d at 888, and held that the provision in the defendant's originally confirmed plan

rejecting the contract need not be approved by the bankruptcy judge.

The relationship between §§ 365 and 1322 and the right of a bankruptcy court to exercise a power of approval over a Chapter 13 plan providing for the rejection of an executory contract are apparently issues of first impression within the Second Circuit. The Court's research, in fact, has failed to uncover a single district or circuit court case outside of the Ninth Circuit that has dealt with the questions present here. The Court, therefore, is working upon an unusually clean slate. Nonetheless, the Court is firm in its conclusion that the Ninth Circuit's holding in *Alexander* is inapplicable to the instant case, and, even if *Alexander* is read so broadly as to cover the circumstances now before the Court, the Ninth Circuit's decision should not be followed.

*Alexander* is distinguishable from the situation confronting the Court in an important respect. *Alexander* involved a subsequent challenge to a provision contained in an already confirmed Chapter 13 plan. The present situation, on the other hand, concerns a bankruptcy judge's initial rejection of a plan, rather than a subsequent challenge to a plan that a bankruptcy court had already confirmed. This distinction is important, for *Alexander* prefaced its discussion of the relationship between §§ 365 and 1322 with the observation that the bankruptcy court's approval of the rejection of an executory contract is not required *"once certain conditions have been met."* *Id.* at 888 (emphasis added). The *Alexander* court, at least implicitly, recognized that the existence of a confirmed Chapter 13 plan constituted one of these necessary conditions. As *In re Tucci*, 47 B.R. 328 (Bkrtcy.E.D.Va.1985) noted, *Alexander* cannot be read to stand for the proposition that an executory contract or unexpired lease may be rejected merely upon the filing of a Chapter 13 plan. *Alexander* "determined that court approval of a rejection of [an executory contract] contained in a proposed Chapter 13 plan was irrelevant as to whether the plan should be confirmed. The rights and liabilities of the parties are not affected until the Chapter 13 Plan is confirmed." *Id.* at 332.

■ Insofar as *Alexander* may be read to preclude a bankruptcy court from exercising a power of approval over the rejection of a executory contract regardless of whether a Chapter 13 plan has been confirmed, this Court must respectfully disagree with the Ninth Circuit. The plain language of § 1322(b)(7) simply states that a Chapter 13 plan may include provisions addressing any of the debtor's executory contracts or unexpired leases which have not already been rejected under § 365. It by no means implies that the bankruptcy court's general power to exercise approval over a trustee's proposed rejection is in any way circumscribed merely because a Chapter 13 plan has been filed. § 1325(a), which sets forth the prerequisites for confirmation of Chapter 13 plan, specifically provides that a plan must comply with "the provisions of this chapter and with other applicable provisions of this title." 11 U.S.C. § 1325(a)(1). § 365 is contained in Chapter 3 of the U.S. Bankruptcy Code, which the Code expressly makes applicable to cases involving Chapter 13. 11 U.S.C. § 103(a). As *Collier On Bankruptcy* notes, "The provisions of section 365 determine the legal consequences of the assumption or rejection of an executory contract or unexpired lease under the terms of a chapter 13 plan." 5 *Collier on Bankruptcy* ¶ 1322.01[1][G][ii] at 1322–14 [15th ed. 1985].

■ Meehan also argues that an amendment of § 1322(b)(7) in 1984 illustrates the validity of her position. § 1322(b)(7) used to read, "[T]he plan may provide for the assumption or rejection of any executory contract or unexpired lease of the debtor not previously rejected under section 365 of this title." On July 10, 1984, Congress amended § 1322(b)(7) so as to add "subject to section 365 of this title" to the beginning of the subsection. Bankruptcy Amendments and Federal Judgeship Act of 1984,

Pub.L. No. 98–353, 98 Stat. 333 (1984) ("Act").[4]

Meehan asserts that this revision indicates the inapplicability of § 365 to the old § 1322(b)(7). The revision, she claims, was designed to bring § 365 to bear on a situation to which it previously was inapposite.

The legislative history of the Act and the form in which it was passed, however, do not support Meehan's contention. The amendment of § 1322(b)(7) is included in the section of the Act which sets forth miscellaneous technical amendments. The legislative history describes the change merely as stylistic. S.Rep. No. 65, 98th Cong. 1st Sess., 86 (1983). The 1984 amendment to § 1322(b)(7), therefore, merely clarified the existing provision rather than effecting a substantive change in the relationship between §§ 365 and 1322.

■ For the above reasons, the Court concludes that the Bankruptcy Court did have the power to withhold approval from Meehan's Chapter 13 plan because of its rejection of the contract with the Bregmans. The Bankruptcy Court thus could refuse to confirm the plan. Furthermore, given the court's power over Meehan's plan, Judge Hall could properly assert his power to modify the automatic stay on the basis of the unacceptable nature of the plan and its proposal that the contract be rejected.

## IV.

Having concluded that Judge Hall had the power to rule as he did, the Court must now turn to the question of whether he correctly exercised this power in the circumstances of this case.

■ The standard for determining whether a debtor's executory contract can properly be rejected is that of the "business judgment test." The business judgment test is a flexible one, designed to allow the trustee, and ultimately the court, to exercise their discretion fairly in the

interest of all who have had the misfortune of dealing with the debtor. A more rigid test might often work substantial injustice in particular cases. *In re Minges,* 602 F.2d 38, 43 (2d Cir.1979).

■ The primary issue under the business judgment test is whether rejection of the contract would benefit general unsecured creditors. This question may well involve a balancing of interests and rejection may be disallowed where the party whose contract is to be rejected would be damaged disproportionately to any benefit to be derived by general creditors. *In re Huang,* 23 B.R. 798, 801 (Bkrtcy. 9th Cir. 1982); *Minges;* 602 F.2d at 38. While disappointment of a purchaser's expectations is an insufficient ground for a court to withhold approval of a rejection, "if in the judgment of the bankruptcy court, an estate is solvent in the sense that a 100 percent payout will occur in the event of liquidation,.... it is within the discretion of the court to decline to authorize rejection of a contract on the grounds that no benefit would accrue to the creditors from the rejection." *Huang,* 23 B.R. at 801, 803.

In applying the principles of the business judgment test to the trustee's attempted rejection of Meehan's contract with the Bregmans, Judge Hall found that, without regard to the proposed rejection of the contract, Meehan's estate was undeniably solvent. The Bankruptcy Court stated:

Considering only the $120,000 due on closing, Ms. Meehan's estate is more than adequate to satisfy her $10,000 homestead exemption, the $25,942.56 that was due on her mortgage at the time of filing, and the $11,435.80 listed as unsecured debt. With or without rejection, Ms. Meehan's creditors will be paid 100% of their claims. Thus, rejection of the contract of sale will not benefit unsecured creditors and the court may decline to authorize rejection of the contract.

46 B.R. at 101–02.

The Bankruptcy Court also noted that a legitimate consideration in determining the

---

**4.** The revision was effective as to cases filed ninety days after the date of enactment and thus does not apply to Meehan's petition, which was filed on August 24, 1984, prior to expiration of the ninety day interim period.

presence of "cause" to modify § 362's automatic stay is "the desire to permit an action to proceed to completion in another tribunal, H.R.Rep. No. 595, 95th Cong., 1st Sess. 343–44 (1977)," the tribunal in this case being the state court. 46 B.R. at 102.

■ The Court holds that Judge Hall's decision to prohibit Meehan from rejecting her contract with the Bregmans, modify the stay "for cause" under § 362(d), and refuse to confirm her Chapter 13 plan was proper and did not involve any misapplication of law, abuse of discretion, or "clearly erroneous" findings of fact. Fed.R.Bkrtcy. 8013; *In re Liberty Return Loads Association, Inc.*, 354 F.2d 83 (2d Cir.1965).

### V.

One final issue deserves mention. The parties, and Judge Hall, have assumed that the contract in question is executory in nature. An executory contract under the Bankruptcy Code is one "on which performance remains due to some extent on both sides," H.R.Rep. No. 595, 95th Cong. 1st Sess. 347 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 6303, or under which the obligation of both parties is so far unperformed that the failure of either party to complete performance would constitute a material breach excusing the other party's performance. *In re Chicago, Rock Island & Pacific Railroad Co.*, 604 F.2d 1002 (7th Cir.1979); *Aetna Casualty & Surety Co. v. Gamel*, 45 B.R. 345 (N.D. N.Y.1984). Insofar as the actual agreement between the parties is concerned, therefore, the contract is indeed executory. Meehan failed to convey title or extend the purchase money mortgage and, as a result, the Bregmans did not pay the remaining money owed.[5]

The question arises, however, as to whether the state court's decision awarding the Bregman's specific performance, an abatement, and damages alters the nature of the contract. The state court, by its award, has adjudicated the specific rights and duties under the contract. In doing so, it has brought the force of a court order to bear on what previously had been a private agreement among individuals. It might be argued that the court's action transformed what previously had been an executory contract, *i.e.*, that the court's decision, in a sense, "executed" the contract by judicially declaring the rights and duties of the parties with respect to their agreement. The court, in other words, "executed" through its order contractual obligations that one of the parties had refused to perform. Seen in this light, the state court's award might be deemed to "execute" the contract between Meehan and the Bregmans, thereby removing it from the realm of executory contracts under the Bankruptcy Code.

■ In any event, viewing the state court's decision as "execution" of a previously executory contract does not affect the Court's decision in this case. If the contract is not executory, then Meehan's Chapter 13 plan improperly rejected it. §§ 365 and 1322 provide only for the rejection of executory contracts. Furthermore, whether or not the contract was executory after the state court's action, Judge Hall could properly conclude that a § 362(d) modification of the automatic stay was warranted: If the contract is categorized as executory, Judge Hall's ruling that Meehan could not avoid the contract was consistent with the principles of the business judgment test; if the contract is declared non-executory, then Meehan's rejection was not authorized by the Bankruptcy Code and thus constituted "cause" to modify the automatic stay.

### VI.

The Court holds that the Bankruptcy Court did not err in modifying the automatic stay granted Meehan pursuant to 11

---

5. Whether the Bregmans had completely paid for Meehan's house or not may very well be irrelevant to the question of the executory nature of the contract of sale. The Ninth Circuit held in *Alexander* that the parties' sales agreement remained executory within the meaning of the Bankruptcy Code even though the plaintiffs had already tendered full performance. 670 F.2d at 888.

U.S.C. § 362 or in refusing to confirm Meehan's Chapter 13 plan. Accordingly, the decision of the Bankruptcy Court is hereby AFFIRMED.

SO ORDERED.