**In the Matter of WALL TIRE DISTRIBUTORS, INC., Debtor.**

**MONROE TIRE SERVICE, INC., Movant,**

v.

**WALL TIRE DISTRIBUTORS, INC., Respondent.**

**Bankruptcy No. 89–52423.**

United States Bankruptcy Court,
M.D. Georgia,
Macon Division.

Jan. 30, 1990.

Gus H. Small, Jr., Atlanta, Ga., for Wall Tire Distributors, Inc.

Cater C. Thompson, Macon, Ga., for Monroe Tire Service, Inc.

Mark Roadarmel, Staff Atty., Office of U.S. Trustee, Macon, Ga., for U.S. Trustee.

## MEMORANDUM OPINION

ROBERT F. HERSHNER, Jr., Chief Judge.

Monroe Tire Service, Inc., Movant, filed a motion on October 11, 1989, asking the Court to compel the adoption or rejection of a contract by Wall Tire Distributors, Inc., Debtor. A hearing was held on November 8, 1989. The Court asked the parties to submit briefs on the issues presented. The Court now publishes its opinion.

Movant and Debtor entered into an "Asset Lease and Purchase Agreement" (the "Agreement") on February 1, 1988. Under this agreement, Movant's interest in the business known as "Monroe Tire Service" or as "Monroe Maximum Auto Care" was to be transferred to Debtor in stages.

Movant agreed to sell Debtor certain nonequipment assets. This sale closed on February 22, 1988 (the "First Closing").

Movant agreed to sublease to Debtor certain equipment for a term commencing on the date of the First Closing and ending on February 1, 1990. The monthly rental was $963.58. Movant had leased this equipment from Textron Financial Corporation in November 1987 (the "Textron Lease"). The Agreement provides that Debtor will make its rental payments to Movant, and that Movant will then pay Textron. Movant was to assign to Debtor all of its interest in the lease on February 1, 1990. Debtor agreed to pay Movant $15,000 for the assignment and to assume all of Movant's liabilities and obligations under the Textron Lease. If Textron fails to approve the assignment, Debtor still must pay the $15,-000 plus the outstanding balance of all amounts due upon prepayment of the Textron Lease.

Movant also agreed to lease to Debtor certain real estate on which the business

was located. The lease was to commence on the date of the First Closing and end on February 1, 1990. The monthly rental was $2,200. The Agreement provides that Debtor will make its rental payments directly to Bank South which holds a lien on the real estate. Movant was to convey this real estate to Debtor on February 1, 1990. Debtor agreed to pay $225,000 for this real estate. Debtor would not receive any credit for its rental payments towards this purchase price.

Debtor filed a petition under Chapter 11 of the Bankruptcy Code on September 25, 1989. Debtor continues to operate its business as debtor in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.[1] Movant contends that the Agreement is an executory contract which must be assumed or rejected by Debtor under section 365(a) of the Bankruptcy Code.[2] Debtor contends that the Agreement is a disguised security agreement in the form of a conditional sales contract and can be modified in its Chapter 11 plan. Both parties agreed that Debtor would remain in possession of the leased property and would continue to make rental payments until the Court renders a final order on Movant's motion.

The issue before the Court is whether the Agreement is an executory contract which must be assumed or rejected, or whether it is a security agreement capable of being modified.

The term "executory contract" is not defined in the Bankruptcy Code. The legislative history of section 365 states: "Though there is no precise definition of what contracts are executory, it generally includes contracts on which performance remains due to some extent on both sides." H.R.

Rep. No. 595, 95th Cong., 1st Sess. 347 (1977), *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 6303. *See NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 522 n. 6, 104 S.Ct. 1188, 1194 n. 6, 79 L.Ed.2d 482 (1984) (legislative history of section 365(a) indicates Congress intended the term "executory contract" to mean a contract on which performance is due to some extent on both sides).

■ This Court has reviewed two bankruptcy opinions by the former United States Court of Appeals for the Fifth Circuit. In each opinion, the former Fifth Circuit discussed the definition of an executory contract.[3] In *Ozark–Mahoning Co. v. American Magnesium Co. (In re American Magnesium Co.)*,[4] the former Fifth Circuit stated:

Both the rule in Texas and in the majority of other jurisdictions is that a contract is executory when something remains to be done by one or more of the parties. An executory contract is one in which a party binds himself to do or not do a particular thing, whereas an executed contract is one in which the object of the agreement is already performed.

488 F.2d at 152.

In *Rivercity v. Herpel (In re Jackson Brewing Co.)*,[5] the former Fifth Circuit stated:

Section 116(1) of Chapter X of the Federal Bankruptcy Act, Title XI, U.S. Code, Section 516 provides that the reorganization judge may in addition to other powers and duties, permit the rejection of executory contracts. Collier in his treatise has defined and expanded upon the meaning of the term "executory contract" as said term is used in the Bankruptcy Act:

---

**1.** 11 U.S.C.A. §§ 1107 and 1108 (West 1979 & Supp.1989).

**2.** 11 U.S.C.A. § 365(a) (West Supp.1989). This section provides:
    (a) Except as provided in sections 765 and 766 of this title and in subsections (b), (c), and (d) of this section, the trustee, subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor.
11 U.S.C.A. § 365(a) (West Supp.1989).

**3.** Although this United States Bankruptcy Court sits in the Eleventh Circuit, it is bound by all decisions of the former Fifth Circuit handed down prior to the close of its business on September 30, 1981. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209–11 (11th Cir.1981).

**4.** 488 F.2d 147 (5th Cir.1974).

**5.** 567 F.2d 618 (5th Cir.1978).

"Unfortunately, however, the term 'executory' as applied to contracts is ambiguous. 'All contracts to a greater or less extent are executory. When they cease to be so, they cease to be contracts.' *All that the term implies is that the contract is not completely 'executed,' that something remains to be done.*

" 'Contracts are executed or executory. *A contract is executed where everything that has to be done is done, and nothing remains to be done ... An executory contract* is one *where it is stipulated by agreement* of minds, upon a sufficient consideration, *that something is to be done or not to be done by one or both the parties ...' "*

Vol. 6, *Collier on Bankruptcy*, Section 2.11 at pp. 331–332.

The United States Court of Appeals for the Fifth Circuit has construed the term "executory contract" in connection with Chapter XI of the Bankruptcy Act consistent with the definition set out in Colliers (the term "Executory Contract" as used in Chapter XI is identical, and thus should be applied and construed in the same manner in a Chapter X proceeding).

567 F.2d at 623.

■■■ Whether the Agreement is executory under section 365(a) is a question of federal law.[6] State law, however, determines whether the failure to perform a remaining obligation is a material breach of the contract. *Hall v. Perry (In re Cochise College Park, Inc.)*, 703 F.2d 1339, 1348 n. 4 (9th Cir.1983). *See also Terrell v. Albaugh (In re Terrell)*, 892 F.2d 469 (6th Cir.1989); *Mitchell v. Streets (In re Streets*

*& Beard Farm Partnership)*, 882 F.2d 233, 235 (7th Cir.1989).

Movant contends that the parties intended the Agreement to be one contract rather than several separate contracts. Movant contends that Debtor must assume or reject the Agreement in its entirety.

In *Byrd v. Gardinier, Inc. (In re Gardinier, Inc.)*,[7] the United States Court of Appeals for the Eleventh Circuit stated:

[T]he intention of the parties is the governing principle in contract construction, and, absent ambiguity in the terms of a contract, intent is gleaned from the four corners of the instrument. Furthermore, that the terms of a transaction are set forth in one instrument is not conclusive evidence that the parties intended to make only one contract, but is only a factor in determining intent. Thus, we look to the terms of the "Contract for Sale of Real Estate" to determine whether Gardinier, Burley, and Kilgore intended to make one contract or two separate contracts.

831 F.2d at 976.

The court noted that there were three aspects of the transaction that were persuasive evidence of the parties intent. These aspects were:

(1) Were the nature and purpose of the agreements different?

(2) Was the consideration for each agreement separate and distinct?

(3) Were the obligations of each party to the agreements interrelated?[8]

■■■ The Court is persuaded that the purpose of the Agreement was to enable Debtor to purchase the business known as Monroe Tire Service. Although the business was being transferred to Debtor in stages,

---

**6.** In *Benevides v. Alexander (In re Alexander)*, 670 F.2d 885 (9th Cir.1982), the circuit court of appeals stated:

There is no need to look at state law for the meaning of "executory contract." As Professor Countryman observed, there was no need for a statutory definition of "executory contract" under the former Bankruptcy Act, because the courts "seem to have experienced little difficulty in fashioning a definition of executory contracts that is both workable and consistent with the apparent policy of those provisions of the Bankruptcy Act dealing with

such contracts." Countryman, *Executory Contracts in Bankruptcy: Part II*, 58 Minn.L. Rev. 479, 563 (1974). Perhaps because the federal courts had fashioned a definition of executory contracts, the drafters of the new Bankruptcy Code found it unnecessary to define the term.

670 F.2d at 888.

**7.** 831 F.2d 974 (11th Cir.1987).

**8.** 831 F.2d at 976.

the Court is persuaded that both Movant and Debtor intended the Agreement to be an indivisible contract for the purchase of the business.

The Court is persuaded that the Agreement was a contract to sell a business. The sale of the nonequipment assets has been completed and is not in issue. The remaining parts of the Agreement are the assignment of the Textron Lease and the sale of the real property. The closing for these parts is scheduled for February 1, 1990.

■ The Court notes that, under Georgia law, a contract for the sale of real property is executory until the buyer pays all the purchase price. A nominal payment of the purchase price does not convey an equitable title even though the buyer may be in actual possession of the property. *See Cloud v. Jacksonville National Bank*, 239 Ga. 353, 236 S.E.2d 587, 589 (1977) (seller under no obligation to convey until full payment according to terms of contract; contract of sale remains executory and no title has passed; nominal payment of purchase price does not convey equitable title); *Hambrick v. Bedsole*, 93 Ga.App. 192, 91 S.E.2d 205, 209 (1956) (contract to sell realty and personalty is mere executory agreement to sell when, by terms of the contract, title was not to pass and delivery of possession was not to be made until purchase price paid). *See also* G. Pindar *Georgia Real Estate Law and Procedure* § 18–2 (3rd ed. 1986) (contract in which the vendor obligates himself to convey title on receipt of the contract price is said to be executory, but upon the actual conveyance of title, by deed or otherwise, it becomes executed).

Even if the Agreement was an "Agreement for Deed," the Agreement would still be executory. Although an "Agreement for Deed" is an unfamiliar device in Georgia practice, it closely resembles a bond for

title, which was an instrument commonly used in the past in connection with sales of land. *Chilivis v. Tumlin Woods Realty Assoc., Inc.*, 250 Ga. 179, 297 S.E.2d 4, 7 (1982).

A bond for title is an executory contract which becomes executed when all the purchase money is fully paid. *Long v. Godfrey*, 198 Ga. 652, 32 S.E.2d 306, 307 (1944).

Several circuit courts of appeals have concluded that a contract for the sale of real estate is an executory contract under the Bankruptcy Code when the required purchase price has not been paid. *See Terrell v. Albaugh (In re Terrell)*, 892 F.2d 469 (6th Cir.1989) (land sale contract is executory under section 365, since under state law both parties have substantial obligations to perform; failure of vendee in possession to make installment payments is a material breach which would excuse performance by vendor; failure of vendor to transfer title is also a material breach); *Speck v. First National Bank of Sioux Falls (In re Speck)*, 798 F.2d 279, 280 (8th Cir.1986) (contract for deed is executory contract; a default in making required payments is a material breach); *Benevides v. Alexander (In re Alexander)*, 670 F.2d 885, 887 (9th Cir.1982) (failure of purchaser to pay purchase price and of seller to give up possession and convey title is material breach of agreement).

The Court is persuaded that the Agreement is an executory contract, and that section 365(a) of the Bankruptcy Code is thus applicable. Movant asks the Court to set a time within which Debtor must apply for approval to either assume or reject the Agreement.

Section 365(d)(2) of the Bankruptcy Code [9] provides that Movant may request that the Court order Debtor to determine within a specified period of time whether it will assume or reject the Agreement. The

---

**9.** 11 U.S.C.A. § 365(d)(2) (West Supp.1989). This section provides:

(2) In a case under chapter 9, 11, 12, or 13 of this title, the trustee may assume or reject an executory contract or unexpired lease of residential real property or of personal property of the debtor at any time before the

confirmation of a plan but the court, on the request of any party to such contract or lease, may order the trustee to determine within a specified period of time whether to assume or reject such contract or lease.

11 U.S.C.A. § 365(d)(2) (West Supp.1989).

Court, therefore, orders that Debtor must apply for approval to assume or reject the Agreement by the close of business on April 2, 1990.

An order in accordance with this memorandum opinion will be entered this date.

### ORDER

In accordance with the memorandum opinion entered this date; it is

ORDERED that Wall Tire Distributors, Inc., Debtor, has until the close of business on April 2, 1990, to apply for approval to assume or reject the "Asset Lease and Purchase Agreement" dated February 1, 1988, between Monroe Tire Service, Inc. and Wall Tire Distributors, Inc.; and it is further

ORDERED that this order be entered on the docket on the date set out below.

SO ORDERED.